[No. A135747. First Dist., Div. Five. Nov. 16, 2012.]

ARMUNDO DARLING et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
WESTERN PACIFIC HOUSING, INC., et al., Real Parties in Interest.

## Counsel

Milstein Adelman, Fred M. Adelman, Mayo L. Makarczyk and Sarah L. Gough for Petitioners.

Wood, Smith, Henning & Berman, Amy L. Foscalina and Robin L. Krutzsch for Real Parties in Interest.

## Opinion

**NEEDHAM, J.**—Petitioners seek writ relief from a trial court order staying their construction defect litigation pursuant to Civil Code section 930.[1] The court imposed the order because petitioners have not completed the statutory prelitigation procedure of section 910 et seq. Petitioners argued that real parties in interest could not obtain the stay because they had failed to respond to petitioners' request for documents (§ 912, subd. (a)), while real parties in interest urged—and the trial court found—that no response to the document request was necessary since petitioners had not served their notice of a claim (§ 910).

We are therefore presented with a question of first impression: must homeowners serve notice of a construction defect claim under section 910, subdivision (a) for a builder to be obligated to respond to their request for documents under section 912, subdivision (a)?

Based on the language of the statute and the statutory scheme, as well as the statutory purpose and relevant legislative history, we conclude that a homeowner must serve notice of a construction defect claim under section 910, subdivision (a) to commence the statutory prelitigation procedure, and until such service the builder has no obligation to respond to a request for documents under section 912, subdivision (a). We will therefore deny the writ petition.

---

[1] Unless otherwise indicated, all statutory references are to the Civil Code.

## I. FACTS AND PROCEDURAL HISTORY

Petitioners are the owners of 86 single-family homes in Fairfield, California. All of the homes were first sold after January 1, 2003, and are therefore subject to division 2, part 2, title 7 of the Civil Code, section 895 et seq., commonly referred to as "SB 800" or the "Right to Repair Act" (Act).

The Act establishes a nonadversarial inspection and repair procedure that allows builders to attempt to resolve homeowners' construction defect claims in advance of litigation. (§ 910 et seq.) As discussed at greater length *post,* section 910 requires a homeowner to serve the builder with notice of a construction defect claim, section 912 requires the builder to produce copies of certain documents to the homeowner, and the builder has the opportunity to repair the purported defect within a given time period. If the homeowner files a lawsuit before the prelitigation procedure is completed, the builder may obtain a stay of the lawsuit. (§ 930, subd. (b).) But if a builder fails to comply with the requirements of the prelitigation procedure, the homeowner may proceed with a lawsuit without completing the prelitigation process. (§ 930, subd. (a); see §§ 912, subd. (i), 920.)

On February 24, 2011, petitioners served upon real parties in interest— Western Pacific Housing, Inc., and Schuler Homes of California, Inc. (Western Pacific)—a request for certain documents under section 912, subdivision (a).[2]

On March 18, 2011, Western Pacific's counsel sent a letter to petitioners' counsel acknowledging "the substantive document requests as proper in scope and specificity in accordance with Civil Code section 912(a), (b), (c), and (d)." However, Western Pacific refused to comply with the document request on the ground it was "premature," contending that no response or production was required "until such time as the homeowner claimants initiate the 'builder' obligations to produce documents under these particular 'SB800 provisions.' " The letter continued: "The obligations and provisions of Chapter 4 of Title 7 of the Civil Code are not effective until such time as the identified claimants or you, as their legal representative, provide written notice to [Western Pacific] via certified mail, overnight mail, or personal delivery in accordance with Civil Code section 910(a)."

---

[2] Although not discussed by the parties in this appeal, the record indicates that petitioners contended in the trial court that they also sent a *notice of construction defect claim* to Western Pacific on February 24, 2011. However, Western Pacific submitted evidence that it never received any such claim notice, and petitioners acknowledged that the notice was returned as undeliverable. The trial court found that the purported service of the notice was incomplete, and the parties in the appeal proceed as if no notice of claim was made.

Construing this response as Western Pacific's refusal to comply with its prelitigation obligations under section 912, subdivision (a), petitioners filed the instant lawsuit on April 5, 2011, seeking damages arising from the alleged defective construction.

On December 14, 2011, Western Pacific filed a motion under section 930, subdivision (b) to stay the action, on the ground that petitioners had not completed the prelitigation procedure.

Petitioners opposed the motion, contending that Western Pacific had lost its right to seek a stay under section 930 because it failed to comply with its statutory requirement to respond to petitioners' document request under section 912, subdivision (a). Petitioners insisted their document request was not premature, because section 912 does not state that such requests may be served only after a notice of claim has been served, and other subdivisions in section 912 require builders to provide documents to homeowners before a notice of claim—in particular, when the property is originally sold.

The trial court granted Western Pacific's motion to stay the lawsuit until petitioners complete the prelitigation procedure set forth in the Act. The court ruled that the document production provision in section 912, subdivision (a), is part of the statutory prelitigation procedure, and the prelitigation procedure can be initiated only by service of a written notice of claim by the homeowners on the builder. Accordingly, the court decided, Western Pacific's refusal to produce documents did not release petitioners from their obligation to comply with the Act.

Petitioners filed their petition for writ of mandate or prohibition in June 2012. We issued an order to show cause, Western Pacific filed a return, and petitioners filed a reply.[3]

## II. DISCUSSION

There is no dispute that petitioners have not effectively served a notice of a claim and have not completed the prelitigation procedure generally required by the Act. Accordingly, the court properly stayed petitioners' lawsuit under section 930, unless petitioners established that Western Pacific could not avail

---

[3] We necessarily determined the propriety of writ review when we issued our order to show cause. (*Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 80 [147 Cal.Rptr. 44]; see *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

itself of the stay provision due to its failure to respond to petitioners' request for documents under section 912, subdivision (a). (See *Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 831, 834 [98 Cal.Rptr.3d 295] (*Standard Pacific*) [homeowner has burden of proof].) That question turns on whether petitioners established that Western Pacific had an obligation to respond to the document request, even though petitioners had not served a notice of claim.

Our analysis begins with an overview of the Act.

## A. Overview of the Act

The Act consists of five chapters. Chapter 1 provides definitions. (§ 895.) Chapter 2 describes actionable construction defects by setting forth standards for residential construction. (§§ 896, 897.) Chapter 3 requires the builder to provide an express limited warranty covering the fit and finish of specified building components, and addresses the builder's obligations if it offers greater protection to the homeowner through an enhanced protection agreement. (§§ 900–907.) Chapter 4—at issue here—sets forth a prelitigation procedure designed to give a builder the opportunity, before litigation commences, to repair defects brought to its attention by a homeowner's claim. (§§ 910–938.) Chapter 5 refers to litigation matters in case the prelitigation procedure does not resolve the claim, such as the deadline for filing a lawsuit, the burden of proof, damages that may be recovered, and defenses the builder may assert. (§§ 941–945.5.)

As mentioned, the heart of this dispute involves the prelitigation procedure set forth in chapter 4 of the Act (Chapter 4), aptly entitled "Prelitigation Procedure." We examine this procedure more closely, next.[4]

### 1. Chapter 4 Prelitigation Procedure: Section 910 Notice of Claim

Chapter 4 begins with section 910. Section 910 requires a homeowner to serve notice of a construction defect claim to commence the prelitigation process, before bringing a lawsuit. The statute provides in relevant part: "Prior to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896), the claimant shall initiate the following prelitigation procedures: [¶] (a) The claimant or his or her legal representative *shall provide written notice* via

---

[4] Under certain circumstances, a builder may opt out of the prelitigation procedure of Chapter 4 by notifying the homeowner, when the sales agreement is executed, of an alternative contractual nonadversarial prelitigation procedure. (§ 914.) There is no contention that any opt-out occurred here.

certified mail, overnight mail, or personal delivery to the builder, in the manner prescribed in this section, of the claimant's claim that the construction of his or her residence violates any of the standards set forth in Chapter 2 (commencing with Section 896). That notice shall provide the claimant's name, address, and preferred method of contact, and shall state that the claimant alleges a violation pursuant to this part against the builder, and shall describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation. In the case of a group of homeowners or an association, the notice may identify the claimants solely by address or other description sufficient to apprise the builder of the locations of the subject residences. *That document shall have the same force and effect as a notice of commencement of a legal proceeding.*" (Italics added.)

 Compliance with section 910 is a prerequisite to filing a lawsuit against a residential builder for construction defects. (See *Standard Pacific, supra,* 176 Cal.App.4th at p. 830; see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 2, 4.) The term "builder" is defined in section 911.

### 2. *Chapter 4 Prelitigation Procedure: Section 912 Provision of Documents*

Section 912 essentially requires the builder to provide certain documents and information to the homeowner at specified times. Section 912 reads: "A builder shall do all of the following" and then sets forth obligations under subdivisions (a) through (h).

 Petitioners made their request for documents under subdivision (a) of section 912, which requires the builder to provide certain documents *within 30 days of the homeowner's request*: "Within 30 days of a written request by a homeowner or his or her legal representative, the builder shall provide copies of all *relevant plans, specifications, mass or rough grading plans, final soils reports, Department of Real Estate public reports, and available engineering calculations,* that pertain to a homeowner's residence specifically or as part of a larger development tract. The request shall be honored if it states that it is made relative to structural, fire safety, or soils provisions of this title." (§ 912, subd. (a), italics added.) The balance of the subdivision addresses copying procedures and circumstances in which the documents had been maintained by the builder but became unavailable due to loss or destruction that was not the builder's fault.

Subdivisions (b), (c), and (d) of section 912 require the builder to provide the homeowner with other types of documents within 30 days of the

homeowner's written request *and at the time of the initial sale of the residence.* The documents subject to this requirement are: all "maintenance and preventative maintenance recommendations" pertaining to the residence, "manufactured products maintenance, preventive maintenance, and limited warranty information," and "the builder's limited contractual warranties in accordance with this part in effect at the time of the original sale of the residence." (§ 912, subds. (b), (c) & (d).)

Subdivisions (e), (f), and (g) of section 912 require the builder to disclose certain information to the purchaser *in the original sales documentation*: the name and address of an agent for notice to whom "claims and requests for information under this section may be mailed" (§ 912, subd. (e)) a notice of the existence of the procedures (which must also be recorded on title), and a written copy of the Act.

The requirements specified in section 912 are mandatory. Subdivision (i) provides: "Any builder who fails to comply with any of these requirements within the time specified is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter and may proceed with the filing of an action, in which case the remaining chapters of this part shall continue to apply to the action."

### 3. *Chapter 4 Prelitigation Procedure: Other Provisions*

▮ Other statutes appearing later in Chapter 4 pertain to the prelitigation process of inspection and repair after the notice of the claim has been received. Among other things: the builder must acknowledge in writing its receipt of the notice of the claim within 14 days after the claim is received (§ 913); the homeowner is released from the requirements of the chapter if the builder does not acknowledge receipt of the notice, elects not to go through the process, or fails to request an inspection in a timely manner (§ 915); the builder must complete its initial inspection and testing within 14 days after it acknowledges its receipt of the notice of the claim (§ 916); the builder may offer in writing to repair the violation and compensate the homeowner for applicable damages "[w]ithin 30 days of the initial or, if requested, second inspection or testing" (§ 917); the homeowner has 30 days after receipt of the repair offer to authorize the builder to proceed with the repair or request alternative contractors (§ 918); the offer to repair shall be accompanied by an offer to mediate the dispute if the homeowner chooses (§ 919); if the builder fails to make an offer to repair or otherwise strictly comply with Chapter 4 within the times specified, the homeowner is released from the requirements of the chapter and may proceed with the filing of an action, and the homeowner may file an action if the contractor performing the repair does not complete the repair in the time or manner specified (§§ 920,

925); and the repairs shall commence within 14 days after acceptance or selection of an alternative contractor or within seven days of the mediation, or within five days of permit issuance, and must be done "with the utmost diligence" and be "completed as soon as reasonably possible." (§ 921, subd. (b).)

Section 930 provides that if a builder fails to perform its prelitigation procedure obligations in a timely manner, the homeowner may proceed to file a lawsuit, but if the homeowner has filed a lawsuit without having completed the prelitigation procedure, the builder may move to stay the action pending the homeowner's compliance. The statute reads: "(a) The time periods and all other requirements in this chapter are to be strictly construed, and, unless extended by the mutual agreement of the parties in accordance with this chapter, shall govern the rights and obligations under this title. If a builder fails to act in accordance with this section within the timeframes mandated, unless extended by the mutual agreement of the parties as evidenced by a postclaim written confirmation by the affected homeowner demonstrating that he or she has knowingly and voluntarily extended the statutory timeframe, the claimant may proceed with filing an action. If this occurs, the standards of the other chapters of this title shall continue to apply to the action. [¶] (b) If the claimant does not conform with the requirements of this chapter, the builder may bring a motion to stay any subsequent court action or other proceeding until the requirements of this chapter have been satisfied. The court, in its discretion, may award the prevailing party on such a motion, his or her attorney's fees and costs in bringing or opposing the motion."

### B. Construction of Section 912, Subdivision (a)

The purpose of statutory construction is to give effect to the legislative intent. (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1222 [135 Cal.Rptr.3d 557] (*Baeza*).) We begin with the plain language of the statute, according each word a commonsense meaning in light of the language and the statute's evident purpose. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1196–1197 [128 Cal.Rptr.3d 205].) If the statute is ambiguous, we turn to other indicia of legislative intent, such as the statutory scheme and legislative history. (*Id.* at p. 1197.)

#### 1. Plain Language of Section 912, Subdivision (a)

Section 912, subdivision (a) states that "[w]ithin 30 days of a written request by a homeowner . . . the builder shall provide copies" of certain documents. (§ 912, subd. (a).) The statute is silent, however, as to whether the homeowner may make this request without serving notice of a claim: there is no express requirement that the homeowner precede his or her document

request with notice of a claim, but there is also no express indication that the homeowner may request documents—or that the builder must comply with the request—before the homeowner has served notice of the claim.

Because the language within section 912, subdivision (a) does not answer the question presented by the petition, we look to other indicia of intent. Petitioners suggest that, simply because there is no express limitation written into subdivision (a) itself, we must conclude the Legislature intended no limitation on a homeowner's ability to compel a builder to provide the documents; but such an approach ignores the reality that the Legislature would find no need to specify a limitation in subdivision (a) if, indeed, the limitation is obvious from its statutory context. Thus, to resolve ambiguity, or simply for the sake of a thorough and commonsense analysis, we turn for guidance to the statutory scheme of which section 912, subdivision (a) is a part.

## 2. *Statutory Scheme*

Section 912 is part of Chapter 4. Its inclusion in that chapter, entitled "Prelitigation Procedure," indicates that section 912 is part of the statutory prelitigation procedure.

The prelitigation procedure does not commence, however, until the service of a notice of a claim. Section 910, addressing the notice of a claim, comes *first* in the chapter. It specifically states that the notice has the same force and effect as "a notice of *commencement* of a legal proceeding." (§ 910, subd. (a), italics added.) The fact that other statutes in Chapter 4, including the statute of limitations (§ 927) and provisions dealing with a builder's acknowledge-ment of receipt of a notice (§§ 913, 915) are based on the date of the service of the notice of claim buttresses the conclusion that the service of notice is necessary to commence the prelitigation period. Indeed, petitioners *admit* the prelitigation procedure commences with the notice of a claim: they concede the truth of Western Pacific's assertion that " 'the legislative history evidences that the [L]egislature intended the Notice of Claim to be the first step in the prelitigation process' " and acknowledge that "[t]he prelitigation process commences with the service of a Notice of Claim."

Because the document request is part of the prelitigation procedure, and the prelitigation procedure does not begin until the homeowner has served notice of a claim, it follows that there can be no prelitigation obligation to produce documents under section 912, subdivision (a) unless the homeowner has commenced the prelitigation procedure by serving notice of a claim. Just as the document request provision of section 912, subdivision (a) comes after the notice of claim provision in section 910, the builder's production of documents must come after the homeowner's notice of a claim.

Petitioners attempt to escape this conclusion by arguing that the document request provision of section 912, subdivision (a) "is a disclosure mechanism which is *not* part of the prelitigation procedure" (italics added), even though it appears in the chapter on prelitigation procedure with all the other statutes regarding prelitigation procedure. Specifically, they point out that other subdivisions in section 912 require builders to provide documents at the time of sale, which would occur before the notice of a claim. But this actually hurts petitioners' position.

The fact that subdivisions (b) through (d) in section 912 require provision of documents within 30 days of the homeowner's request *and at the time of the initial sale of the residence*, and subdivisions (e) through (g) of the statute require disclosure of information in the *"original sales* documentation" (italics added), indicates that the Legislature felt it necessary to use that language in order to specify that the obligation to provide the particular material referenced in those subdivisions arises before the prelitigation procedure has begun. But the Legislature did *not* add such language to subdivision (a). The absence of such language, in a provision appearing in the chapter dealing with the prelitigation procedure, confirms that the obligation to produce the documents specified in subdivision (a) arises only in the course of the prelitigation procedure, commenced by the notice of a claim.

Consistent with our analysis is *Baeza, supra,* 201 Cal.App.4th 1214. There, homeowners sued a developer for construction defects, and the developer sought an order compelling some of them to comply with the developer's contractual provisions for a nonadversarial prelitigation procedure, which the developer had lawfully adopted in lieu of the statutory prelitigation procedure. (*Id.* at p. 1219; see § 914, subd. (a).) The homeowners opposed the motion, arguing that the prelitigation procedures could not be enforced because the developer had not disclosed information required by section 912: the name and address of an agent to whom claims and information requests may be directed, in the original sales documentation (subd. (e)); a notice of the existence of the statutory procedures, in the record of title (subd. (f)); and a written copy of the Act, in the original sales documentation (subd. (g)). (*Baeza,* at pp. 1220, 1224–1225.) The trial court disagreed with the homeowners, stayed the litigation, and ordered compliance with the contractual prelitigation procedures. (*Id.* at p. 1220.) The appellate court denied the homeowners' petition for writ of mandate, ruling that a builder who opts out of the Chapter 4 prelitigation procedures in favor of its own contractual prelitigation procedures opts out of Chapter 4 entirely, including the disclosure provisions of section 912. (*Baeza,* at pp. 1225–1226.) That holding, based on the facts in *Baeza,* is not directly germane here, but the court's analysis in reaching its holding is.

Petitioners in *Baeza* argued that the requirements of section 912 were not part of the Chapter 4 litigation procedure (as petitioners argue here), so the section 912 requirements applied to builders whether they opted out of Chapter 4 or not. The court in *Baeza* had none of it: "*We reject petitioners' argument that the disclosure requirements set out in section 912 are not part of Chapter 4's nonadversarial prelitigation procedures.* Section 912 specifies the builder's obligations, then provides that, if the builder fails to comply with any of the section 912 requirements, the builder 'is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter.' (§ 912, subd. (i).) Thus, it makes compliance with the disclosure provisions a prerequisite to the builder's right to enforce the statutory nonadversarial prelitigation procedures of Chapter 4. The disclosures, although made at the time of sale of the residence, are an element of the statutory nonadversarial prelitigation procedures." (*Baeza, supra*, 201 Cal.App.4th at p. 1226, italics added.)[5] The court in *Baeza* continued: "We also reject petitioners' attempt to distinguish between the nonadversarial prelitigation procedures of Chapter 4 and other provisions of Chapter 4, which they contend are not part of that procedure. The Act does not separate the two, but simply refers to Chapter 4 in its entirety, and distinguishes it from the other chapters of the Act. Section 914, subdivision (a), provides that '[t]his chapter establishes a nonadversarial procedure'; if the procedure does not resolve the parties' dispute, an 'action to enforce *the other chapters* of this title' may be brought. (§ 914, subd. (a), italics added.) The builder may elect 'to use alternative nonadversarial contractual provisions in lieu of *this chapter*.' (*Ibid.*, italics added.) Other sections of the Act also treat the provisions of Chapter 4 as a single unit. . . ." (*Baeza*, at p. 1226.)

As relevant to this case, therefore, *Baeza* emphasizes that Chapter 4 in its entirety—including section 912, subdivision (a)—pertains to the nonadversarial prelitigation procedure. We agree, and therefore the section 912, subdivision (a) obligation to produce documents cannot exist independent of the prelitigation procedure.

In sum, the language of section 912, subdivision (a), in the context of its statutory scheme, indicates that the builder's obligation to provide documents under section 912, subdivision (a) does not arise until the prelitigation procedure is commenced by service of the notice of a claim.

---

[5] The point, obviously, is that the disclosures required at the time of sale are an "element" of the prelitigation procedures in the sense that a builder cannot avail itself of the opportunities and protections of the prelitigation procedure unless it made those disclosures; the prelitigation procedure does not actually begin way back at the time of sale or at any point before the service of a notice of a claim.

### 3. *Statutory Purpose*

The purpose of the Act—or at least the purpose of what is now Chapter 4—is to give a builder the opportunity to resolve a homeowner's construction defect claim in an expeditious and nonadversarial manner. (§ 914, subd. (a); Stats. 2002, ch. 722, § 1(b) & (c), p. 4247 [Chapter 4 was intended to provide for the "prompt and fair resolution of construction defect claims" and "procedures for early disposition of construction defects"].) More precisely, the point is to help resolve defect claims that the homeowner already has, not to open up the builder's document files to homeowners who have no claim and perhaps never will.

Requiring the homeowner to serve notice of a construction defect claim before obtaining documents from the builder under section 912, subdivision (a) is consistent with the statute's evident purpose. First the homeowner would serve the notice of claim, giving the builder an idea of the purported defects; then the homeowner would request and obtain the documents under section 912, subdivision (a); the builder would inspect the defects, make an offer to repair, and compensate the homeowner as set forth in the statutes; and the homeowner could use the documents and other information in evaluating and deciding whether to accept the repair.

Petitioners' arguments, on the other hand, are based on assumptions that the Act was created to do something else—namely, empower homeowners to get documents from builders whether they have a defect claim or not. Petitioners argue, for instance, that homeowners should be allowed to request the documents specified in section 912, subdivision (a) without giving notice of a claim, so they can investigate what they believe to be defects and for use in putting a notice together. But according to the statute, the notice of claim need only "describe the claim in *reasonable* detail sufficient to determine the nature and location, *to the extent known*, of the claimed violation." (§ 910, subd. (a), italics added.) There is no evidence or other indication in the record that any of the documents obtainable under section 912, subdivision (a) would be of any necessity in determining whether there was a defect or assembling the claim notice. Just as likely, the documents would be relevant to evaluating the builder's offer to repair (§ 918), and for this purpose obtaining the documents "[w]ithin 30 days of a written request by a homeowner" (§ 912, subd. (a)), after service of the notice of the claim, would suffice.

Indeed, the record in *this* case makes it clear that petitioners saw no need to obtain the documents before making a claim. Instead, according to petitioners' representation to the trial court, they tried to serve a notice of claim on the same date as their request for documents (albeit in a separate

envelope). Their notice, attached to their writ petition as an exhibit, sets forth the alleged defects and corresponding statutory violations for 87 homeowners, even though petitioners had not received the documents available under section 912, subdivision (a). And without those documents, petitioners were also able to prepare and file a complaint, an amended complaint, and a second amended complaint, setting forth pages and pages of the specific defects allegedly in their houses.

Next, petitioners argue that homeowners may want to use the documents in order to take action to prevent defects in their homes from causing damage. However, there is no evidence or other indication that the Legislature intended the Act, let alone section 912, subdivision (a), to provide a means for homeowners to prevent damage from construction defects, except by expediting the repair of those defects by the process the Legislature expressly set forth in the Act.

Given the statutory language, the statutory scheme, and the statute's evident purpose, petitioners fail to establish that a builder is obligated to produce documents under section 912, subdivision (a) before service of a notice of claim under section 910.

### 4. *Legislative History*

The parties do not point us to any legislative history expressly describing a request for documents under section 912, subdivision (a). Of possible assistance, however, is a passage from an August 29, 2002 Senate Floor Analysis of Senate Bill No. 800 (2001–2002 Reg. Sess.), which states: "In a significant departure from existing law, the bill imposes a procedure that a homeowner must follow before bringing suit against a builder. In summary, the homeowner must send a written notice to the builder setting out the nature of the claim. The builder must acknowledge the claim in writing. The builder may *then* elect to conduct inspection and testing of the alleged defect within a specified period, and *must provide certain documentation to the homeowner on request regarding building plans and specifications*. Most importantly, the builder may then offer to repair the alleged violation within a prescribed period." (*Id.* at p. 4, italics added.) This passage contemplates the builder providing documents to the homeowner after the homeowner has served notice of a claim, not before.

Petitioners argue that this legislative history refers to section 917, which sets forth the required contents of the builder's written offer to repair and then states: "Upon written request by the homeowner or his or her legal representative, and within the timeframes set forth in this chapter, the builder shall also provide any available *technical documentation, including, without*

*limitation, plans and specifications*, pertaining to the claimed violation within the particular home or development tract." (Italics added.) Petitioners urge that the legislative history, apparently discussing what is now section 917, is immaterial because section 912, subdivision (a) lists different documents and does not refer to documents that "pertain[] to the claimed violation within the particular home or development tract."

Petitioners miss the point, however, in two respects. First, whether or not this passage in the legislative history supports Western Pacific's position or refers only to the provision of documents under section 917, the fact remains that nothing in the legislative history supports *petitioners'* argument that a builder must produce documents under section 912, subdivision (a) before a homeowner gives notice of a claim. Petitioners' argument therefore remains unsupported.

Second, the language in section 917 may have greater significance than petitioners let on. Section 917 requires the builder to provide certain documents "pertaining to the claimed violation" "within the timeframes set forth in this chapter." The phrase "within the timeframes set forth in this chapter" is not altogether clear, but with respect to document production seems to fit best with the timeframe in section 912, subdivision (a)—"[w]ithin 30 days of a written request by a homeowner." If so, the fact that the Legislature in section 917 gave a builder 30 days after the homeowner's request to give documents regarding the *"claimed* violation"—past tense—suggests that "within 30 days of a written request by a homeowner" refers to a time period *after* the violation has been claimed by service of notice. A reasonable inference is that "within 30 days of a written request by a homeowner" in section 912, subdivision (a) also presupposes that notice of the claim has already been served.

■ At any rate, nothing in the legislative history advances petitioners' position. In light of the language and purpose of section 912, subdivision (a) and the statutory scheme, as well as the absence from the legislative history of anything that supports petitioners' arguments, we conclude that the builder has no obligation to provide documents to a homeowner under section 912, subdivision (a) unless the homeowner has served notice of a claim under section 910.[6]

---

[6] Western Pacific filed a request for judicial notice of certain documents, including the legislative history of Senate Bill No. 800 (2001–2002 Reg. Sess.) on July 6, 2012. Petitioners did not object to the request. We hereby grant it.

## III. DISPOSITION

The order to show cause is discharged, and the petition is denied. The parties shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

Jones, P. J., and Bruiniers, J., concurred.

Petitioners' petition for review by the Supreme Court was denied February 13, 2013, S207612.