Filed 2/21/14

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| KB HOME GREATER LOS ANGELES, INC., | B246769 |
|---|---|
| Petitioner, | (Los Angeles County Super. Ct. No. MC022417) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ALLSTATE INSURANCE COMPANY, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS in mandate. Randolph A. Rogers, Judge. Petition granted.

Lorber, Greenfield & Polito, Thomas F. Olsen and Dane F. Joseph for Petitioner.

No appearance for Respondent.

Matthews Law Group, Jason P. Williams for Real Party in Interest.

_____

In this case we hold that the Right to Repair Act (Civ. Code, § 895 et seq.[1] (the Act)) requires that notice be given to a builder before repairs are made to a home subject to the Act. KB Home Coastal Inc. (KB Home)[2] has petitioned for a writ of mandate to compel the trial court to vacate an order that denied its motion for summary judgment and granted the summary judgment motion of real party in interest, Allstate Insurance Company (Allstate). We conclude that KB Home is entitled to summary judgment. There was a failure to comply with the notice requirements of the Act, depriving KB Home of its right to inspect and repair a defect in a home subject to the Act. We shall grant the petition, directing the trial court to vacate its order and issue a new order granting KB Home's motion for summary judgment and denying Allstate's motion for summary judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Dipak Roy bought a new home from builder KB Home in 2004. The right to repair addendum to the purchase agreement he signed advised of the prelitigation procedures of the Act and listed KB Home's corporate address in Los Angeles, where notice of defect claims were to be sent. The limited warranty agreement allowed for telephone notice in cases of emergency, to be followed by a reasonably timely written warranty claim.

In March 2010, the property manager discovered a water leak in the home, which was vacant at the time. The property manager shut off the water and called Roy, who in turn called his insurer, Allstate. A mitigation company was hired to remove excess water, damaged dry wall, and carpet. Allstate inspected the property in April 2010 and completed repairs of the home in June. In July 2010, Allstate sent KB Home a notice of its intent to pursue its subrogation right to recover payment for loss at the subject

[1] Unless otherwise indicated, statutory references are to the Civil Code.

[2] KB Home represents that it was incorrectly sued under its former name, KB Home Greater Los Angeles Inc.

2

property, specifically "water damage due to pipe burst . . . in master bedroom on 2nd floor. Ceiling damage." The notice was sent to an address in Irvine. In November 2010, Allstate's counsel sent a demand for settlement of the loss in the amount of $80,984.61. The demand was sent to KB Home's corporate address in Los Angeles. KB Home did not respond.

In March 2011, Allstate filed a complaint in subrogation against KB Home, asserting causes of action for negligence, breach of implied warranty, and strict liability. In July 2011, the trial court sustained KB Home's demurrer to the complaint with leave to amend, on the ground that Allstate did not allege compliance with the prelitigation procedures of the Act.

Allstate then filed a first amended complaint that advanced a single cause of action for property damage in subrogation, which alleged a violation of the Act. KB Home demurred on the ground that Allstate had failed to serve a notice of claim that would have allowed KB Home to repair the defect. Instead of ruling on the demurrer to the first amended complaint, the court issued a nunc pro tunc order reviving the original complaint and overruling the demurrer to that pleading, which it previously had sustained. The court specifically ruled that the prelitigation procedure of the Act did not apply to Allstate's subrogation claim. On KB Home's petition, we issued an alternative writ of mandate, directing the court to vacate the nunc pro tunc order and to consider the demurrer to the first amended complaint. The court complied, sustaining that demurrer with leave to amend. We then dismissed KB Home's petition as moot.

In March 2012, Allstate filed a second amended complaint for property damage in subrogation, which combined the causes of action for negligence, strict liability, breach of implied warranty,[3] and violation of the Act from the two previous complaints. In May, the court overruled KB Home's demurrer to that complaint, again ruling that the Act did not apply to subrogation claims. On KB Home's petition, we issued another alternative

---

[3] The cause of action for breach of implied warranty has been voluntarily dismissed.

3

writ, directing the court to sustain the demurrer to the negligence and strict liability causes of action in the second amended complaint and overrule the demurrer to the cause of action under the Act. The court complied, and we dismissed the petition as moot.

Subsequently, KB Home filed a motion for summary judgment against Allstate and a cross-complaint for indemnity against various entities involved in the construction of the home. The summary judgment motion was based on failure to give KB Home timely notice to allow it to repair the defect, which was asserted as an affirmative defense against Allstate's claim in subrogation. Allstate filed its own motion for summary judgment. It argued that KB Home had violated the building standards of the Act and was statutorily liable for damages, that the Act did not require notice to the builder before repairs, and that there was compliance with the notice requirements.

In January 2013, the court denied KB Home's summary judgment motion, ruling that Allstate's July and November 2010 letters to KB Home substantially complied with the notice requirements of the Act, and KB Home lost its right to repair when it failed to respond to those letters. The court granted Allstate's motion for summary judgment, finding KB Home breached the building standards of the Act, and Allstate did not have to prove its damages. On KB Home's third petition in this case, we issued yet another alternative writ of mandate, directing the court to grant KB Home's motion for summary judgment and to deny Allstate's motion for such relief. The trial court declined to comply with the alternative writ in light of the recent decision in *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98 (*Liberty Mutual*) (review denied Dec. 11, 2013).

## DISCUSSION

In its return, Allstate argues that *Liberty Mutual*, *supra*, 219 Cal.App.4th 98, has resolved the issue before us because, under its holding, the Act does not apply in cases of actual property damage, and Allstate has valid common law tort claims and remedies in subrogation. The issue in *Liberty Mutual* was whether the Act provides the exclusive remedy in cases where a construction defect causes actual damage to a home. That issue

4

was the subject of KB Home's earlier writ petition, which we dismissed as moot after the trial court sustained the demurrer to Allstate's common law tort claims pursuant to our alternative writ.  KB Home's current writ petition pertains to summary judgment motions on Allstate's only remaining cause of action—which was pled under the Act.  Thus, whether the Act or tort common law applies in this case is not an issue properly before us at this time.  (See Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2013) ¶ 15:227.5, p. 15-96.16 [issues not raised in petition may not be raised in return].)  Nothing in our decision prevents Allstate from raising that issue in an appeal from the final judgment.  (See *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254 [order sustaining demurrer to some but not all causes of action normally subject to appeal from final judgment]; cf. *Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 504 [interlocutory order granting summary adjudication reviewable on appeal from final judgment].)

The issue that is before us is whether the Act requires that notice be given to a builder before repairs are made.  *Liberty Mutual*, *supra*, 219 Cal.App.4th 98 did not address that issue since, in that case, the builder was allowed to repair the damage to the home.  Here, in contrast, it is undisputed that KB Home was not given notice or opportunity to inspect and repair the defect before the damage was repaired.  We conclude that the failure to give timely notice to KB Home is fatal to Allstate's cause of action under the Act, and summary judgment for KB Home is proper under the circumstances.

We review de novo the trial court's ruling on a motion for summary judgment.  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)  The motion is properly granted if the moving papers establish there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law.  (Code of Civ. Proc. § 437c, subd. (c); *Aguilar v. Atlantic Richfield* Co. (2001) 25 Cal.4th 826, 843.)  Statutory interpretation also is subject to de novo review.  (*Kelly v. County of Los Angeles* (2006) 141 Cal.App.4th 910, 919.)

Statutory analysis begins with the plain language of the statute, and if that language is unambiguous, the inquiry ends there. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1394.) The Act applies to the original construction of individual homes sold after January 1, 2003. It has five chapters. "Chapter 1 provides definitions. (§ 895.) Chapter 2 describes actionable construction defects by setting forth standards for residential construction. (§§ 896, 897.) Chapter 3 requires the builder to provide an express limited warranty covering the fit and finish of specified building components, and addresses the builder's obligations if it offers greater protection to the homeowner through an enhanced protection agreement. (§§ 900–907.) Chapter 4 . . . sets forth a prelitigation procedure designed to give a builder the opportunity, before litigation commences, to repair defects brought to its attention by a homeowner's claim. (§§ 910–938.) Chapter 5 refers to litigation matters in case the prelitigation procedure does not resolve the claim, such as the deadline for filing a lawsuit, the burden of proof, damages that may be recovered, and defenses the builder may assert. (§§ 941–945.5.)" (*Darling v. Superior Court* (2012) 211 Cal.App.4th 69, 75 (*Darling*).)

The prelitigation procedure in chapter 4 begins with section 910, which requires a homeowner to provide a written notice of a violation of any of the building standards listed in chapter 2. The builder must acknowledge receipt of the notice within 14 days after receiving it (§ 913), must complete an initial inspection and testing within 14 days after acknowledging receipt (§ 916), and may offer to repair the violation and compensate the homeowner for applicable damages within 30 days of the initial or, if necessary, a second inspection or testing (§ 917). Within 30 days of receipt of the repair offer, the homeowner must either accept it or request alternative contractors (§ 918), or the parties may agree to mediate (§ 919). Repairs must begin within 14 days after acceptance or after selection of an alternative contractor, within seven days of the mediation, or within five days of permit issuance, and must be completed "as soon as reasonably possible," such as within 120 days. (§ 921.) The builder is given the option of making an offer of cash instead of repair. (§ 929.)

The homeowner is released from this prelitigation procedure and may file a lawsuit if the builder does not acknowledge receipt of the notice, elects not to go through the procedure, fails to request an inspection, fails to make an offer to repair, makes a cash offer that the homeowner rejects, does not complete the repair in time, or does not comply with the statutory timeframes. (§§ 915, 920, 925, 929 & 930.)

Allstate argues that section 910 does not expressly require that notice to the builder be given before repairs are made. But the section may not be construed in isolation; rather, we must read it "'"'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]'" [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) The prelitigation procedure in chapter 4 is sequential. It begins with the homeowner's notice of defect, gives the builder an opportunity to inspect, and leads to mediation or an offer of repair or cash. The sequential procedure fulfils the purpose of the Act "to give a builder the opportunity to resolve a homeowner's construction defect claim in an expeditious and nonadversarial manner. [Citation.]" (*Darling*, *supra*, 211 Cal.App.4th 69, 82.) In *Darling*, the court held that the builder's obligation to disclose documents upon request under section 912 did not arise before notice of defect was given and the prelitigation procedure commenced. (*Ibid*.) Similarly, here, completing repairs before giving a notice of defect turns the prelitigation procedure on its head and precludes the builder from inspecting and making an offer to repair.

It cannot reasonably be argued that notifying KB Home of a defect in the home months after it was repaired substantially complied with the prelitigation requirements of chapter 4. Section 912, subdivision (a) requires the notice to "provide the claimant's name, address, and preferred method of contact," to "state that the claimant alleges a violation pursuant to this part against the builder," and to "describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation." Although they identified the homeowner's name and address, and the nature and location of the construction defect, the July and November 2010 letters to KB Home made no reference to the Act, and the construction defect they identified no

longer existed at that time. Instead, the letters asserted Allstate's subrogation rights to recover for covering its insured's loss. But an insurer's rights in subrogation are not greater than those of the insured. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104.) The insured homeowner was required to give KB Home timely notice of construction defect under the Act, and no such notice was given here.

Allstate contends the procedural requirements of chapter 4 are not practical when a construction defect causes actual damage, and therefore the Act does not apply in such cases. This argument does not help Allstate since it invalidates its only remaining cause of action. KB Home argues that the Act should be construed to provide for reasonable notice in cases of emergency. Since no notice was given in this case, we need not determine what would constitute reasonable notice under the Act. We disagree with Allstate's reading of the statutory provisions as, in effect, allowing the builder to drag its feet in cases of catastrophic damage by delaying action to the maximum allowed time limits.

Section 910 expressly permits the homeowner to contact the builder through "any applicable normal customer service procedure," so long as the builder is given the statutorily required written notice as well. Thus, the Act does not prevent the homeowner from seeking immediate redress in a catastrophic damage case. It also envisions that, in the offer to repair, the builder will compensate the homeowner for all applicable damages recoverable under section 944 "within the timeframe for the repair" set out in chapter 4. (§ 917.) Under section 944, the homeowner is entitled not only to damages for repairing the construction defect, but also to "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards," as well as to other consequential damages, such as reasonable relocation and storage expenses, and lost business income in the case of a home-based business. Since the builder is required to compensate the homeowner for consequential damages, including the cost of repair of actual property damage caused by a construction defect, any delay up to the statutory maximum risks increasing the builder's liability. Thus, the builder has an incentive to act quickly in such cases. On the other hand, catastrophic damage cannot be an excuse to

deprive a builder of its statutory right to have timely notice of a defect, to inspect the property, to offer to repair the defect and compensate the homeowner, and thus to resolve the matter in an expeditious, nonadversarial manner.[4]

Allstate also argues that the homeowner's failure to comply with the prelitigation requirements does not completely bar its subrogation claim. If the homeowner does not comply with the prelitigation procedure, the builder is allowed to move to stay the lawsuit until the homeowner complies. (§ 930, subd. (b).) But staying the lawsuit serves no purpose in a case like this, where a defect no longer exists and there is nothing to inspect or repair.

The builder also has an affirmative defense that may excuse in whole or part any liability, damage or loss "[t]o the extent it is caused by a homeowner's unreasonable failure to minimize or prevent those damages in a timely manner, including the failure of the homeowner to allow reasonable and timely access for inspections and repairs under this title. This includes the failure to give timely notice to the builder after discovery of a violation, but does not include damages due to the untimely or inadequate response of a builder to the homeowner's claim." (§ 945.5, subd. (b).) Where, as here, it is undisputed that the builder was not given notice and an opportunity to inspect or repair a plumbing defect that caused damage to a vacant home, we see no injustice in interpreting the statute as altogether barring the claim for damages.

The failure to give KB Home timely notice and an opportunity to inspect and offer to repair the construction defect excuses KB Home's liability for damages under the Act. In light of that conclusion, we do not consider whether Allstate must prove its damages under the Act and whether its evidence on the subject was admissible .

---

[4] In an unrelated argument, Allstate claims that KB Home's limited warranty is inconsistent with the Act because it does not cover actual property damage. But Allstate acknowledges that the warranty adopts the standards in chapter 2 of the Act, and that those standards cover only construction defects rather than the resulting property damage. The warranty advises of the procedural requirements of the Act, which are distinct from the requirements for making a warranty claim.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order of January 18, 2013, and to enter an order granting KB Home's motion for summary judgment and denying Allstate's motion.  KB Home is entitled to its costs for this writ proceeding.

CERTIFIED FOR PUBLICATION


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.