Filed 2/10/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM BLANCHETTE et al., Petitioners, v. THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent; GHA ENTERPRISES et al., Real Parties in Interest. | D070545 (Imperial County Super. Ct. No. ECU9103) |

ORIGINAL PROCEEDINGS in mandate.  L. Brooks Anderholt, Judge.  Petition granted.

JCL Law Firm and Jean-Claude Lapuyade for Petitioners.

No appearance for Respondent.

Wood Smith Henning & Berman and Brenda Nicole Radmacher for Real Parties in Interest.

In this construction defect case we are called upon to interpret the notice and time requirements of the Right to Repair Act (the act), Civil Code[1] section 895 et seq. As we explain, the goal of the act is to resolve, if possible, construction defect claims without resort to litigation. In brief, the act requires that, before initiating litigation, construction defect claimants must give a builder notice of alleged defects and if a builder wishes, an opportunity to inspect and repair the noticed defects. The act requires that a claimant's notice set forth the defects "in reasonable detail" sufficient to determine the nature and location of the alleged defects. (§ 910.) A builder receiving the notice has 14 days in which to acknowledge receipt of the claim and 14 additional days in which, if the builder wishes, to inspect the premises; within 30 days after completing an inspection, a builder may make an offer to repair the claimed defects. The act requires that its time limits and other requirements be strictly construed. (§ 930, subd. (a).)

Here, we grant petitioner William Blanchette's petition for a writ of mandate and direct that the trial court vacate its order staying proceedings pending Blanchette's compliance with the act. As we explain, Blanchette's compliance with the act was relieved by virtue of real party GHA, Enterprises, Inc.'s (GHA)[2] failure to timely acknowledge receipt of Blanchette's notice of a claim. Contrary to GHA's argument, the act's goal of promptly resolving claims without resort to litigation cannot be achieved by permitting homebuilders to serve tardy responses to claims or to ignore them entirely.

---

[1] All further statutory references are to the Civil Code.

[2] Unless otherwise indicated, all references to GHA include real parties in interest GHA Enterprises, Inc., Rumax Ranch, LLC, and GHA Holdings, Inc.

FACTUAL AND PROCEDURAL BACKGROUND

Blanchette is the owner of one of 28 homes constructed by GHA.  No later than February 2, 2016, Blanchette served GHA with notice of a claim, which set forth a number of alleged defects in all 28 homes; Blanchette's notice used, almost verbatim, the language section 896 employs in setting forth building standards, the violation of which, give rise to actionable claims against homebuilders.[3]  Attached to the notice of claims

---

[3]     Section 896 establishes the following as building standards which support a construction defect claim:
"(a) With respect to water issues:
(1) A door shall not allow unintended water to pass beyond, around, or through the door or its designed or actual moisture barriers, if any.
(2) Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its designed or actual moisture barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this paragraph, 'systems' include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any.
(3) Windows, patio doors, deck doors, and their systems shall not allow excessive condensation to enter the structure and cause damage to another component. For purposes of this paragraph, 'systems' include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any.
(4) Roofs, roofing systems, chimney caps, and ventilation components shall not allow water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers, including, without limitation, internal barriers located within the systems themselves. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate, and sheathing, if any.
(5) Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent structure. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate, flashing, and sheathing, if any.
(6) Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow unintended water to pass within the systems themselves and cause damage to the systems. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate, flashing, and sheathing, if any.
(7) Foundation systems and slabs shall not allow water or vapor to enter into the structure so as to cause damage to another building component.

(8) Foundation systems and slabs shall not allow water or vapor to enter into the structure so as to limit the installation of the type of flooring materials typically used for the particular application.

(9) Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the structure so as to cause damage to another building component.

(10) Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system, including any internal barriers located within the system itself. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any.

(11) Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the structure and cause damage to another component. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any.

(12) Retaining and site walls and their associated drainage systems shall not allow unintended water to pass beyond, around, or through its designed or actual moisture barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them.

(13) Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design.

(14) The lines and components of the plumbing system, sewer system, and utility systems shall not leak.

(15) Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems.

(16) Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system.

(17) Showers, baths, and related waterproofing systems shall not leak water into the interior of walls, flooring systems, or the interior of other components.

(18) The waterproofing system behind or under ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other components so as to cause damage. Ceramic tile systems shall be designed and installed so as to deflect intended water to the waterproofing system.

(b) With respect to structural issues:

(1) Foundations, load bearing components, and slabs, shall not contain significant cracks or significant vertical displacement.

(2) Foundations, load bearing components, and slabs shall not cause the structure, in whole or in part, to be structurally unsafe.

(3) Foundations, load bearing components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction.

(4) A structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction.

(c) With respect to soil issues:

(1) Soils and engineered retaining walls shall not cause, in whole or in part, damage to the structure built upon the soil or engineered retaining wall.

(2) Soils and engineered retaining walls shall not cause, in whole or in part, the structure to be structurally unsafe.

(3) Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used.

(d) With respect to fire protection issues:

(1) A structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction.

(2) Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney.

(3) Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire.

(e) With respect to plumbing and sewer issues:

Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants. However, no action may be brought for a violation of this subdivision more than four years after close of escrow.

(f) With respect to electrical system issues:

Electrical systems shall operate properly and shall not materially impair the use of the structure by its inhabitants. However, no action shall be brought pursuant to this subdivision more than four years from close of escrow.

(g) With respect to issues regarding other areas of construction:

(1) Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. However, no action shall be brought upon a violation of this paragraph more than four years from close of escrow.

(2) Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations."

was a list of the names and addresses of each of the owners of the 28 homes in the development.

GHA responded to Blanchette's notice of claims by letter dated February 23, 2016. GHA asserted the construction defects set forth in Blanchette's claim were not alleged

---

Borrowing from the language of the statute Blanchette alleged:

"Each window, patio doors, deck doors, and their systems allows water to pass beyond, around, or through the window, patio door, or deck door or its designed or actual moisture barriers, including, without limitation, internal barriers within the systems themselves.

"Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems allow water to pass into the adjacent structure.

"Stucco, exterior siding, and exterior walls allow excessive condensation to enter the structure and cause damage to other components, including but not limited to floor coverings, baseboards, drywall, doorjambs and door thresholds.

"Foundations, load bearing components, and slabs, contain significant cracks or significant vertical displacement.

"Soils are causing damage to the structure built upon the soil in the form of cracked concrete, cracked stucco, crack[ed] foundations and cracked drywall.

"Fireplaces, chimneys, chimney structures, and chimney termination [caps] were constructed and installed in such a way as to cause an unreasonable risk of fire outside the fireplace enclosure and chimney.

"Electrical systems operate improperly and materially impair the use of the structure by Claimant.

"Living space air-conditioning was not provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations.

"Ceramic tile and tile backing was installed in such a manner that the tile detaches throughout the Property."

6

with reasonable detail, as required by section 910, subdivision (a); nonetheless GHA offered to inspect the homes.

Blanchette responded to GHA on February 26, 2016. Blanchette asserted that GHA's response was untimely and excused him and the other homeowners from any obligations under the act.

Thereafter, Blanchette filed a construction defect class action complaint against GHA in the trial court. GHA responded to the complaint by moving to stay the action until Blanchette satisfied the prelitigation requirements of the act. Blanchette opposed the motion on the grounds GHA had not timely responded to his notice of claims.

The trial court agreed with GHA that Blanchette's notice of claim lacked detail sufficient to trigger GHA's obligations under the act. Accordingly, the trial court stayed the action pending completion of the notice and inspection procedures required by the act and ordered that Blanchette serve a new notice of claims to "identify each individual claimant by address," to "provide a defect list for each subject property, which sets forth [the] alleged defects," to "set forth the location, nature and severity of each alleged defect," and to identify "the code section(s) [the claimants] contend each alleged defect violates."

Blanchette filed a petition for a writ of mandate in which he challenged the trial court's order. We issued an order to show cause.

DISCUSSION

I

Blanchette's petition raises a novel issue under the act: when must defects in a notice of claim be raised by a builder? We also note that because the trial court enforced its interpretation of the act by way of a pretrial stay, Blanchette has no adequate remedy by way of appeal. The novel issue raised by Blanchette's petition and the absence of an adequate remedy by way of appeal support writ review here. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273-1274.)

II

The act, its purposes, and provisions were in many important respects considered by the court in *Darling v. Superior Court* (2012) 211 Cal.App.4th 69 (*Darling*). In *Darling*, the court rejected a homeowner's contention the document production required of homebuilders under the act (§ 912) could be initiated in the absence of the notice of claims required by section 910. (*Darling*, at p. 84.) However, neither *Darling* nor any other case which has come to our attention, has directly considered when defects in the notice of claim must be asserted by a builder.

As the court in *Darling* noted, the prelitigation requirements of the act are set forth in Chapter 4 of the act, commencing with section 910. (*Darling, supra*, 211 Cal.App.4th at p. 82.) The purpose of Chapter 4, "is to give a builder the opportunity to resolve a homeowner's construction defect claim in an expeditious and nonadverserial manner. [Citation.]" (*Ibid.*; see also Stats. 2002, ch. 722, § 1(b) & (c), p. 4247 [Chapter 4

8

intended to provided for "prompt and fair resolution of construction defect claims" and "procedures for early disposition of construction defects claims."].)

"Chapter 4 begins with section 910. Section 910 requires a homeowner to serve notice of a construction defect claim to commence the prelitigation process, before bringing a lawsuit. The statute provides in relevant part:  'Prior to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896), the claimant shall initiate the following prelitigation procedures: [¶] (a) The claimant or his or her legal representative shall provide written notice via  certified mail, overnight mail, or personal delivery to the builder, in the manner prescribed in this section, of the claimant's claim that the construction of his or her residence violates any of the standards set forth in Chapter 2 (commencing with Section 896). That notice shall provide the claimant's name, address, and preferred method of contact, and shall state that the claimant alleges a violation pursuant to this part against the builder, and shall describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation. In the case of a group of homeowners or an association, the notice may identify the claimants solely by address or other description sufficient to apprise the builder of the locations of the subject residences. That document shall have the same force and effect as a notice of commencement of a legal proceeding.

"Compliance with section 910 is a prerequisite to filing a lawsuit against a residential builder for construction defects.  [Citations.] "  (*Darling, supra*, 211 Cal.App.4th at pp. 75-76.)

9

After a notice of claim has been served under section 910, a process expressly designed to permit the parties to resolve claims without resort to litigation commences. As the court in *Darling* set forth, following service of notice: "the builder must acknowledge in writing its receipt of the notice of the claim within 14 days after the claim is received (§ 913); the homeowner is released from the requirements of the chapter if the builder does not acknowledge receipt of the notice, elects not to go through the process, or fails to request an inspection in a timely manner (§ 915); the builder must complete its initial inspection and testing within 14 days after it acknowledges its receipt of the notice of the claim (§ 916); the builder may offer in writing to repair the violation and compensate the homeowner for applicable damages '[w]ithin 30 days of the initial or, if requested, second inspection or testing' (§ 917); the homeowner has 30 days after receipt of the repair offer to authorize the builder to proceed with the repair or request alternative contractors (§ 918); the offer to repair shall be accompanied by an offer to mediate the dispute if the homeowner chooses (§ 919); if the builder fails to make an offer to repair or otherwise strictly comply with Chapter 4 within the times specified, the homeowner is released from the requirements of the chapter and may proceed with the filing of an action, and the homeowner may file an action if the contractor performing the repair does not complete the repair in the time or manner specified (§§ 920, 925); and the repairs shall commence within 14 days after acceptance or selection of an alternative contractor or within seven days of the mediation, or within five days of permit issuance, and must be done 'with the utmost diligence' and be 'completed as soon as reasonably possible.' (§ 921.)"  (*Darling, supra*, 211 Cal.App.4th 77-78.)

10

Importantly, section 930 provides: "(a) The time periods and all other requirements in this chapter are to be strictly construed, and, unless extended by the mutual agreement of the parties in accordance with this chapter, shall govern the rights and obligations under this title. If a builder fails to act in accordance with this section within the timeframes mandated, unless extended by the mutual agreement of the parties as evidenced by a postclaim written confirmation by the affected homeowner demonstrating that he or she has knowingly and voluntarily extended the statutory timeframe, the claimant may proceed with filing an action. If this occurs, the standards of the other chapters of this title shall continue to apply to the action. [¶] (b) If the claimant does not conform with the requirements of this chapter, the builder may bring a motion to stay any subsequent court action or other proceeding until the requirements of this chapter have been satisfied. The court, in its discretion, may award the prevailing party on such a motion, his or her attorney's fees and costs in bringing or opposing the motion."

III

When we are called upon to interpret a statute we begin with its express terms and, if ambiguity or conflict arise, we resolve them by reference to the statute's purpose. (See *Darling, supra*, 211 Cal.App.4th at p. 69.) Section 913 is clear. It provides that following service of a notice of claim, a builder must acknowledge receipt of the notice within 14 days. Section 910 provides the notice of claim must state the name and address of the claimant or claimants and that the claim or claimants allege a violation of building standards set forth in the act. Here, Blanchette's notice of claim met the requirements of section 910. It provided his name and address and a statement alleging violations of the

11

act's building standards. Section 915 is equally explicit: "[i]f a builder fails to acknowledge receipt of the notice of a claim within the time specified . . . this chapter does not apply and *the homeowner is released from the requirements of this chapter and may proceed with the filing of an action*." (Italics added.) We are obligated to *strictly* enforce section 913's time limits. (§ 930.)

This brings us to the portion of section 910 that requires a notice of claim "describe the claim in *reasonable* detail sufficient to determine the nature and location, *to the extent known*, of the claimed violation." (Italics added.) Unlike the 14-day time limit set forth in section 913 and the express consequence for failing to meet that deadline set forth in section 915, whether a claim provides sufficient detail and the extent of a claimant's knowledge are matters that will vary from case to case.

Based upon our reading of the applicable statutes, we conclude that where, as here, a claimant provides his or her name and address and a statement alleging violation of building standards, service of the notice will trigger the 14-day response time set forth in section 913. If a builder believes the notice is not sufficient to determine the nature and location of the claimed violation, the builder may within that 14-day period, bring the lack of specificity to the claimant's attention. However, the requirement for specificity is not a ground upon which the developer may choose to ignore the notice of a defect and the 14-day time period within which it must respond. The need for specificity is intended to guide the parties to a resolution before a potential legal dispute.

We believe our interpretation is consistent with the purpose of the act, which is to promote resolution of a homeowner's construction defect claims "in an expeditious and *nonadverserial manner*. [Citation.]" (*Darling, supra*, 211 Cal.App.4th at p. 82, italics added; see also Stats. 2002, ch. 722, § 1(b) & (c), p. 4247.) Given its variability and inherently subjective nature the "reasonable detail" requirement of section 910, is a matter that should be promptly resolved, if it can be, by *the parties* and *before* litigation commences. Plainly, an interpretation which permits a builder to ignore the time limits of section 913 and nonetheless preserve its objection to the lack of detail in a notice and require that the trial court then resolve the issue after litigation has commenced, will only delay rather than accelerate resolution of construction defect claims. Requiring prompt objection as to the detail set forth in a notice of claim is thus far more consistent with the purpose of the act than permitting a builder to ignore a notice of claim or serve a tardy acknowledgement.

A builder who receives proper notice of a potential defect is therefore obliged to respond within the 14-day period as prescribed by statute. If the builder believes there is insufficient specificity, it is obliged to respond to that effect. Thereafter the parties through discussion and inspection can together determine and resolve any potential defect issues.

As we have explained, a developer who unilaterally concludes the level of specificity in a notice is insufficient, and therefore concludes it need not respond within

13

the 14-day period prescribed by statute, acts at its peril if later, it wishes to employ the inspection and settlement process otherwise mandated by the statute.

Our construction of the act strictly applies the time limits of the act, as required by its terms, but gives builders more than adequate opportunity to vindicate their right to a reasonable specification of defects.

Here, we agree the notice of claim was served but on its face, was insufficient. It simply repeats the language of section 896. It did not provide the "reasonable detail sufficient to determine the nature and location, to the extent known" of claimed violations, as required by section 910. While at the early stages of giving notice of potential defects, the statutory process does not require a homeowner provide anything approaching an expert opinion as to the nature and extent of the defects, without some information about the nature and location of the circumstances which the claimants believe support their claims, builders cannot be expected to meaningfully engage in the inspection and resolution process required by the statute. For example, if a claimant sends notice that a water stain has developed on a wall, that notice would be sufficient to alert the developer as to the subcontractor that may be required to inspect the claimant's concern. If the claimant sends notice that a crack has developed in the ceiling, the developer may wish to inspect first to determine which subcontractor should further respond in order to determine the nature and cause of the claimant's concern.

On the other hand, the record here is also clear that GHA did not acknowledge receipt of Blanchette's notice of claim within the 14-day period prescribed by section 913. Contrary to the trial court's ruling, GHA's failure to timely acknowledge

14

Blanchette's notice of claim and resolve the issue of specificity relieved Blanchette of any further obligations under the act.

Because GHA did not timely acknowledge receipt of Blanchette's claim and set forth its objections to the information provided in the claim, Blanchette was "released from the requirements of [the act]."  (§ 915.)

DISPOSITION

Let a writ issue commanding respondent to vacate its order granting the motion to stay filed by real parties in interest and to enter a new and different order denying the motion.  The stay issued by this court on July 13, 2016, is dissolved.  Blanchette to recover costs he incurred in this writ proceeding.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

15