Filed 9/26/13 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>BROOKFIELD CRYSTAL COVE LLC,<br><br>    Defendant and Respondent. | G046731<br><br>(Super. Ct. No. 34-2011-00498089)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on August 28, 2013, be modified as follows:

On page 7, delete the second full paragraph, beginning "Many provisions," and replace it with the following two new paragraphs:

> Many provisions of the Right to Repair Act support the conclusion the Act covers instances where construction defects were discovered before any actual damage had occurred. Nothing in the Act supports a conclusion it rewrote the law on common law claims

arising from actual damages sustained as a result of construction defects. As our Supreme Court has acknowledged: "As a general rule, '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] "A statute will be construed in light of common law decisions, unless its language '"clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." [Citations.]' [Citation.]"' [Citation.] Accordingly, '[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' [Citation.]" (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297.)

We next review code sections of the Act that demonstrate it was not intended to, nor did it, abrogate common law rights and remedies in a situation where the homeowner has suffered actual damage. These code sections would make little sense if actual damage had already occurred in the manner alleged in the complaint.

This modification does not effect a change in the judgment.



FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

Filed 8/28/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Plaintiff and Appellant, | G046731 |
| v. | (Super. Ct. No. 30-2011-00498089) |
| BROOKFIELD CRYSTAL COVE LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge. Reversed.

Law Offices of Brian J. Ferber, Brian J. Ferber, Jeffrey K. Jayson; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Plaintiff and Appellant.

Susan M. Benson & Associates and Susan M. Benson for National Association of Subrogation Professionals as Amicus Curiae on behalf of Plaintiff and Appellant.

Ulich & Terry, Andrew K. Ulich, Donald W. Fisher, Ivette Kincaid and Jonathan C. Terry for Defendant and Respondent.

Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, John M. Kennedy and Allen Lohse for Comstock Crosser & Associates as Amicus Curiae on behalf of Defendant and Respondent.

Nick Cammarota for California Building Industry Association as Amicus Curiae on behalf of Defendant and Respondent.

\*       \*       \*

INTRODUCTION

Eric Hart bought a newly constructed home from Brookfield Crystal Cove LLC (Brookfield). A pipe in the home's sprinkler system burst, causing significant damage. Brookfield repaired the damage. Hart's homeowners insurer, Liberty Mutual Insurance Company (Liberty Mutual), paid Hart's relocation expenses, incurred while Hart was out of his home during the repair period. Liberty Mutual sued Brookfield in subrogation to recover those expenses. The trial court found Liberty Mutual's complaint was time-barred under the Right to Repair Act, Civil Code section 895 et seq. (the Right to Repair Act or the Act), and, sustaining a demurrer, dismissed it. We reverse.

The Right to Repair Act was enacted to provide remedies where construction defects have negatively affected the economic value of a home, although no actual property damage or personal injuries have occurred as a result of the defects. We hold the Act does not eliminate a property owner's common law rights and remedies, otherwise recognized by law, where, as here, actual damage has occurred. Accordingly, Liberty Mutual's complaint in subrogation, based on Hart's right to recover actual damages, states causes of action. As our conclusion requires a reversal of the judgment, we need not address additional arguments raised by Liberty Mutual.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2004, Hart purchased a single-family home developed and built by Brookfield. The grant deed transferring the property was executed in November 2004, and recorded a month later. According to the complaint in subrogation, in January 2008,

2

"a fire sprinkler and/or pipe suddenly burst and failed," flooding Hart's home. Brookfield acknowledged its liability for, and repaired, the damage to Hart's home.

Hart moved into a hotel for several months while Brookfield repaired the damage to the house. Liberty Mutual paid for Hart's hotel and other relocation expenses during that time.

In August 2011, Liberty Mutual filed a complaint in subrogation against Brookfield to recover the relocation expenses it incurred on Hart's behalf. Liberty Mutual later filed a first amended complaint, to which Brookfield demurred. Following briefing and a hearing, the trial court sustained the demurrer with leave to amend. Liberty Mutual did not amend its complaint within the time specified by the court; Brookfield therefore filed an ex parte application for an order of dismissal and entry of judgment. The court granted the application and entered judgment in favor of Brookfield. Liberty Mutual timely appealed.

DISCUSSION

I.

*STANDARD OF REVIEW AND CONTROLLING LEGAL PRINCIPLES*

We review an order sustaining a demurrer de novo. (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445.) We are not bound by the trial court's construction of the complaint (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958); rather, we independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318).

We also review de novo issues of statutory construction. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative

3

intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.] "'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.'" [Citation.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152.)

Liberty Mutual filed this action as a subrogee of Hart. The complaint alleges causes of action for strict liability, negligence, breach of contract, breach of warranty, equitable estoppel, and declaratory relief. Under the doctrine of subrogation, when an insurer pays money to its insured for a loss caused by a third party, the insurer succeeds to its insured's rights against the third party in the amount the insurer paid. (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 633-634.) Upon subrogation, the insurer steps into the shoes of its insured. (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908.) "'Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer.'" (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104.) Liberty Mutual paid money to Hart for relocation expenses incurred due to Brookfield's alleged acts or omissions. Liberty Mutual therefore succeeded to Hart's rights against Brookfield for damages. Liberty Mutual's right to recover from Brookfield is dependent on whether Hart would have been able to recover the relocation expenses from Brookfield.

II.

*THE HISTORY OF THE RIGHT TO REPAIR ACT*

The issue before us is whether Liberty Mutual's complaint in subrogation falls exclusively within the Right to Repair Act, and therefore is time-barred.[1] We start

---

[1] In sustaining the demurrer, the trial court concluded Civil Code section 896, subdivision (e) applied; that section makes the Right to Repair Act applicable as follows: "(e) With respect to plumbing and sewer issues: [¶]

4

with a brief history of the Act and identification of the problem it was intended to address.  Normally, we would begin by analyzing the language of the statute.  In this case, however, the language of the statute can be best considered with an understanding of the Act's impetus and purpose.

In *Aas v. Superior Court* (2000) 24 Cal.4th 627, 632, the California Supreme Court held that construction defects in residential properties, in the absence of actual property damage, were not actionable in tort.  The plaintiffs in *Aas v. Superior Court* contended that their homes suffered a variety of construction defects, and sought as damages from the homebuilders the costs of repair and/or the diminution in the value of their homes.  (*Id.* at p. 633.)  The trial court excluded evidence of any defects that had not caused property damage; both the Court of Appeal and the Supreme Court upheld that evidentiary ruling.  (*Id.* at pp. 633-634.)

In 2002, the California Legislature enacted the Right to Repair Act.  A key specified goal of the Act was to abrogate the holding of *Aas v. Superior Court*.  "In response to the holding in *Aas,* the Legislature enacted Civil Code section 895 et seq."  (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1202, fn. omitted.)  The legislative history of the Act explained:  "This bill would make major changes to the substance and process of the law governing construction defects.  It is the product of extended negotiations between various interested parties.  Among other things, the bill seeks to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, as well as concerns expressed by homeowners and

_____

Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants.  However, no action may be brought for a violation of this subdivision more than four years after close of escrow."  (Civ. Code, § 896, subd. (e).)  Another subdivision of section 896, on which neither the trial court nor Brookfield relied, applies as follows:  "(a) With respect to water issues:  [¶] . . . [¶] (14) The lines and components of the plumbing system, sewer system, and utility systems shall not leak.  [¶] (15) Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems."  (Civ. Code, § 896, subd. (a)(14), (15).)  We treat a fire sprinkler system, which is nowhere specifically mentioned in the Right to Repair Act, as falling within the definition of either a plumbing system or a utility system; it would therefore, in a proper case, be covered by the Right to Repair Act.  We do so in view of the complaint's broad allegation that "a fire sprinkler and/or pipe suddenly burst and failed."  Consequently, as alleged, those components are covered by the Act.  (Civ. Code, § 897.)

their advocates over the effects of a recent Supreme Court decision that held that defects must cause actual damage prior to being actionable in tort [*Aas v. Superior Court*, (2000) 24 Cal.4th 627]. [¶] . . . [¶] . . . [E]xcept where explicitly specified otherwise, liability would accrue under the standards regardless of whether the violation of the standard had resulted in actual damage or injury. As a result, the standards would essentially overrule the *Aas* decision and, for most defects, eliminate that decision's holding that construction defects must cause actual damage or injury prior to being actionable." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 1, 4, italics added; see Assem. Com. on Judiciary, Rep. on Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 26, 2002, p. 3 ["these standards effectively end the debate over the controversial decision in the *Aas* case to the effect that homeowners may not recover for construction defects unless and until those defects have caused death, bodily injury, or property damage, no mat[t]er how imminent those threats may be" (italics added)]; State and Consumer Services Agency, Enrolled Bill Rep. on Sen. Bill No. 800 (2001-2002 Reg. Sess.) Sept. 16, 2002, p. 2 ["This bill is intended to address the perceived inequity of the *Aas* decision and give homeowners the ability to have specified defects in the construction of their homes corrected before the defects cause actual harm or damage"].) [2]

Nowhere in the legislative history is there anything supporting a contention that the Right to Repair Act barred common law claims for actual property damage. Instead, the legislative history shows that the legislation was intended to grant statutory rights in cases where construction defects caused economic damage; the Act did nothing to limit claims for actual property damage. Simply put, a homeowner who suffers actual

---

[2] Liberty Mutual asked this court to take judicial notice of the legislative history of the Right to Repair Act. Brookfield did not oppose Liberty Mutual's request. We have taken judicial notice of the Act's legislative history.

damages as a result of a construction defect in his or her house has a choice of remedies; nothing in the Act takes away those rights.

III.

*THE STATUTORY LANGUAGE SHOWS LIBERTY MUTUAL'S SUBROGATION CLAIMS ARE NOT COVERED BY THE RIGHT TO REPAIR ACT.*

The Act is organized in the following manner: "Chapter 2 of the Act . . . sets out building standards, the violation of which constitutes a deficiency in construction for which the builder may be held liable to the homeowner. ([Civ. Code, ]§§ 896, 897.) Chapter 3 of the Act imposes obligations on the builder, including an obligation to furnish an express limited warranty. ([Civ. Code, ]§§ 900-907.) Chapter 4 of the Act . . . prescribes nonadversarial prelitigation procedures a homeowner must initiate prior to bringing a civil action against the builder seeking recovery for alleged construction deficiencies. ([Civ. Code, ]§§ 910-938.) Chapter 5 of the Act sets out the applicable statute of limitations, the burden of proof, the damages that may be recovered, and the affirmative defenses that may be asserted; it also makes the Act binding on successors-in-interest of the original home purchaser. ([Civ. Code, ]§§ 941-945.5.)" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1222-1223.)

Many provisions of the Right to Repair Act support the conclusion the Act covers instances where construction defects were discovered before any actual damage had occurred. Nothing in the Act supports a conclusion it rewrote the law on common law claims arising from actual damages sustained as a result of construction defects. We next review code sections of the Act that so demonstrate. These code sections would make little sense if actual damage had already occurred in the manner alleged in the complaint.

(1) Civil Code section 916, subdivision (a) gives the builder the right "to inspect the claimed unmet standards," and specifies how that

7

inspection and testing are to take place. This code section requires the builder to assume costs of damage occurring as a result of the testing, and further requires the builder to "restore the property to its pretesting condition within 48 hours of the testing." (Civ. Code, § 916, subd. (a).)

(2) Civil Code section 917 provides detailed information on how, when, and by whom inspection and testing of the structure may occur.[3] The specific language quoted in footnote 3, *ante*, dramatically illustrates that the legislative intent in enacting the Act was to provide for identification and repair of construction defects before they cause actual damage to the structure or its contents, not to provide the sole remedy to recover actual damages that have occurred as a result of construction defects.

(3) Many code sections in the Act provide timeframes for the homeowner to notify the builder (Civ. Code, § 910, subd. (a)) and the builder to acknowledge receipt of the notice of the claim (*id.*, § 913), as well as the inspection of the property by the builder (*id.*, § 916), the builder's offer to repair (*id.*, § 917), the homeowner's response to the offer to repair (*id.*, § 918), and the completion of the

---

[3] "Within 30 days of the initial or, if requested, second inspection or testing, the builder may offer in writing to repair the violation. The offer to repair shall also compensate the homeowner for all applicable damages recoverable under Section 944, within the timeframe for the repair set forth in this chapter. Any such offer shall be accompanied by a detailed, specific, step-by-step statement identifying the particular violation that is being repaired, explaining the nature, scope, and location of the repair, and setting a reasonable completion date for the repair. The offer shall also include the names, addresses, telephone numbers, and license numbers of the contractors whom the builder intends to have perform the repair. Those contractors shall be fully insured for, and shall be responsible for, all damages or injuries that they may cause to occur during the repair, and evidence of that insurance shall be provided to the homeowner upon request. Upon written request by the homeowner or his or her legal representative, and within the timeframes set forth in this chapter, the builder shall also provide any available technical documentation, including, without limitation, plans and specifications, pertaining to the claimed violation within the particular home or development tract. The offer shall also advise the homeowner in writing of his or her right to request up to three additional contractors from which to select to do the repair pursuant to this chapter." (Civ. Code, § 917.)

8

repairs of the construction defects by the builder (*id.*, § 921). In the case of an actual catastrophic loss, the detailed timeframes would be unnecessary and nonsensical. If, as Brookfield argues, the Right to Repair Act applies to all claims involving construction defects regardless of actual damage, a homeowner whose property was severely damaged or destroyed would be required to await a solution during a lengthy process. As noted by the amicus curiae on behalf of Liberty Mutual, enforcement of a requirement of exclusive compliance with the notice provisions of the Act under those circumstances would effectively extinguish the subrogation rights of all homeowners' insurers who promptly cover their insureds' catastrophic losses. There is nothing in the Act or in its legislative history that shows the Legislature intended to eliminate those subrogation rights.

(4) Civil Code section 942 eliminates the need to prove causation and damages in connection with claims brought for violation of the Right to Repair Act: "In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a homeowner need only demonstrate, in accordance with the applicable evidentiary standard, that the home does not meet the applicable standard, subject to the affirmative defenses set forth in Section 945.5. No further showing of causation or damages is required to meet the burden of proof regarding a violation of a standard set forth in Chapter 2 (commencing with Section 896), provided that the violation arises out of, pertains to, or is related to, the original construction." (Civ. Code, § 942.) We find nothing in

the language of the Act or its legislative history supporting a conclusion that the Legislature intended to eliminate the need to prove causation or damages on all claims arising out of construction defects where property damage occurs. The elimination of such basic elements of proof, however, makes perfect sense when the claim is for construction defects that have not yet caused any actual damage.

(5) Civil Code sections 931 and 943 disprove Brookfield's contention that the Right to Repair Act was intended to provide the sole means for seeking redress for damages incurred due to any and all construction defects identified in the Act. Section 931 provides, in relevant part: "If a claim combines causes of action or damages not covered by this part . . . , the claimed unmet standards shall be administered according to this part . . . ." Section 943, subdivision (a) provides: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. Damages awarded for the items set forth in Section 944 in such other cause of action shall be reduced by the amounts recovered pursuant to Section 944 for violation of the standards set forth in this title."[4] These code sections establish the Act itself acknowledges that other laws may apply to, and other remedies may be available for,

---

[4] Liberty Mutual describes this code section as "limit[ing] the causes of action allowable under" the Act. We agree.

10

construction defect claims, and, therefore, that the Act is not the exclusive means for seeking redress when construction defects cause actual property damage.

In support of Brookfield, amici curiae, California Building Industry Association and Comstock Crosser & Associates (amici curiae), argue Civil Code section 944's wide range of damages available for claims under the Right to Repair Act proves Liberty Mutual's claims are covered by the Act and are therefore time-barred. Section 944 provides: "If a claim for damages is made under this title, the homeowner is only entitled to damages for the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute." The statute's inclusion of "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards" as part of the damages available for a violation of the Right to Repair Act does not mean that such actual damages may only be recovered by a claim under the Act, given our discussion of the other language of the Act.

Amici curiae also argue the Right to Repair Act abrogated the existing statutes of limitations for construction defect cases, which distinguished between patent defects (four years) and latent defects (10 years). (Code Civ. Proc., §§ 337.1, 337.15.) They further argue this means all construction defect cases must be governed by the Right to Repair Act. We disagree. While one of the purposes of the Act was unquestionably to do away with different statutes of limitations applying to latent versus patent defects when those defects do not result in actual property damage, the Legislature

11

did not repeal Code of Civil Procedure sections 337.1 and 337.15. Those statutes remain and evidence a legislative intent and understanding that the limitations periods they contain could and would be used in litigation other than cases under the Act.

Notably, the legislative history for the Right to Repair Act provides, in part: "This bill would provide for a ten-year statute of limitations for construction defect actions, with certain limited exceptions . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800, *supra*, as amended Aug. 28, 2002, p. 2, underscoring omitted.) The legislative history also shows the purpose of the statutes of limitations included in the Act reflected how long various systems within a home can be expected to last. This history, again, is consistent with our reading of the Act: "[Senate Bill No.] 800 shortens the statute of limitations for several components of a home shorter than 10 years realistically reflecting how long those components can be expected to meet the standards." (Home Ownership Advancement Foundation, Floor Alert re Sen. Bill No. 800 (2001-2002 Reg. Sess.) Aug. 30, 2002.)

Finally, Civil Code section 896 provides, in relevant part: "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a builder, and to the extent set forth in Chapter 4 (commencing with Section 910), a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title." Brookfield argues the language "any action" means that the present case must fall within the Right to Repair Act. Brookfield's argument, however, is circular; Brookfield's argument is essentially that any action arising out of the Act is an action under the Act. Section 896 refers to any action that is covered by the Right to Repair Act; as explained *ante*, we conclude the Act was never intended to, and does not, establish exclusive

12

remedies for claims for actual damages for construction defects such as those suffered by Hart.

For all these reasons, Civil Code section 896 does not provide an exclusive remedy, as Brookfield argues. By creating a remedy for a particular cause of action, the Right to Repair Act does not expressly or impliedly support an argument that it mandates an exclusive remedy, and certainly does not derogate common law claims otherwise recognized by law. (See, e.g., *Century Surety Co. v. Crosby Ins., Inc.* (2004) 124 Cal.App.4th 116, 126 [by analogy, in the insurance context, statute establishing rescission as remedy for concealment does not make rescission the exclusive remedy for such a claim].)

Based on the foregoing analysis of the language of the Right to Repair Act and its legislative history, we hold the Act does not provide the exclusive remedy in cases where actual damage has occurred because of construction defects. Therefore, Liberty Mutual's subrogation claims were not time-barred for failing to comply with the Act. We reject Brookfield's arguments that the Legislature sub silentio eliminated common law actions for actual damages for construction defects, eliminated subrogation rights, and repealed Code of Civil Procedure sections 337.1 and 337.15. The demurrer should have been overruled.

DISPOSITION

The judgment is reversed.  Appellant to recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.