Filed 8/26/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MCMILLIN ALBANY LLC et al., Petitioners, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; CARL VAN TASSELL et al., Real Parties in Interest. | F069370 (Super. Ct. No. S-1500-CV-279141) **OPINION** |

ORIGINAL PROCEEDING; petition for writ of mandate. David R. Lampe, Judge.

Borton Petrini, Calvin R. Stead and Andrew M. Morgan for Petitioners.

Donahue Fitzgerald, Kathleen F. Carpenter; Ware Law, Amy R. Gowan and Dee A. Ware for California Building Industry Association as Amicus Curiae on behalf of Petitioners.

Newmeyer & Dillon, Alan H. Packer, J. Nathan Owens, Paul L. Tetzloff and Jeffrey R. Brower for Leading Builders of America as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Milstein Adelman, Fred M. Adelman and Mayo L. Makarcyzk for Real Parties in Interest.

-ooOoo-

Real Parties in Interest, Carl Van Tassell et al. (real parties), filed an action against the builders of their homes for recovery of damages allegedly resulting from defects in the construction of the homes.  Petitioners, McMillin Albany LLC et al. (McMillin), moved to stay the litigation until real parties complied with the statutory nonadversarial prelitigation procedures of the "Right to Repair Act", which applies to construction defect litigation involving certain residential construction.  Real parties opposed the motion, contending the statutory prelitigation procedures did not apply because they had dismissed the only cause of action in their complaint that alleged a violation of the Right to Repair Act.  The trial court denied the stay, and McMillin petitioned this court for a writ of mandate compelling the trial court to vacate its order denying the motion and enter a new order granting the stay as requested.  We grant the writ.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Real parties, the owners of 37 homes constructed by McMillin, filed a first amended complaint alleging eight causes of action, including strict products liability, negligence, and breach of express and implied warranty.  They alleged the homes were in a defective condition at the time they purchased them, and the defects had resulted in damage to their homes and their component parts.  The third cause of action of the first amended complaint alleged violation of the building standards set forth in Civil Code section 896.[2]  Section 896 is part of a statutory scheme commonly referred to as the Right

---

[1]    We grant real parties' unopposed requests for judicial notice, filed November 10 and 12, 2014.

[2]    All further statutory references are to the Civil Code unless otherwise indicated.

2.

to Repair Act (§§ 895 et seq.; the Act).[3]  Under the Act, before a homeowner who claims defective residential construction can file an action against the builder in court, the homeowner must give notice of the claimed defects to the builder and engage in a nonadversarial prelitigation procedure, which affords the builder an opportunity to attempt to repair the defects.  (§ 910.)  If the homeowner files suit without giving the required notice, the builder may obtain a stay of the litigation, pending completion of the prelitigation process.  (§ 930, subd. (b).)

Real parties did not give McMillin notice of the alleged defects before filing suit. The parties attempted to negotiate a stay of the judicial proceedings to complete the prelitigation process, but real parties' attorney withdrew from the negotiations, dismissed the third cause of action of the first amended complaint, and contended real parties were no longer required to comply with the statutory prelitigation process because they had dismissed the cause of action alleging violation of the Act.  McMillin filed a motion for a stay, which real parties opposed.  The trial court denied the motion, concluding real parties were entitled to plead common law causes of action in lieu of a cause of action for violation of the building standards set out in section 896, and they were not required to submit to the prelitigation process of the Act when their complaint did not allege any cause of action for violation of the Act.  McMillin filed this petition for a writ of mandate, seeking a writ directing the trial court to vacate its order denying McMillin's motion for a stay and to enter a new order granting a stay pending completion of the prelitigation process.

---

[3]     See, e.g., *Belasco v. Wells* (2015) 234 Cal.App.4th 409, 413; *The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1334; *Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1222, fn. 5.  The Act is also referred to as SB 800 (Sen. Bill No. 800 (2001–2002 Reg. Sess.)).

## *DISCUSSION*

### I.  Writ Relief

A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)  Writ review is deemed extraordinary and appellate courts are normally reluctant to grant it. (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100; *City of Half Moon Bay v. Superior Court* (2003) 106 Cal.App.4th 795, 803.)  Where an order is not appealable, but is reviewable only upon appeal from a later judgment, writ relief may be appropriate if appeal after judgment would be an ineffective remedy. (*Baeza v. Superior Court, supra,* 201 Cal.App.4th at p. 1221.)  McMillin claims they are entitled to the benefits of the nonadversarial prelitigation procedure that permits them to attempt to repair the claimed defects in the homes before real parties may bring an action against them in court, but the trial court's order denies them that opportunity.  If they may not appeal that ruling until after judgment, the benefits of the statutory prelitigation procedure will be lost, even if they prevail on appeal.  We conclude McMillin does not have "a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)

Additionally, a writ may be granted when the petition presents an issue of first impression that is of general interest to the bench and bar.  (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 655.)  McMillin's writ petition presents an issue of first impression, which is of interest to builders, home buyers, their attorneys, and others. The issue may escape review unless it is addressed in a writ proceeding.  Accordingly, we conclude review by extraordinary writ is appropriate in this case.

### II.  Mootness

Real parties assert the issue presented by the writ petition is moot because they have offered to stipulate to a stay of the action pending completion of the statutory prelitigation procedure, if McMillin will dismiss its petition.  They contend that, in light

4.

of this offer, there is no actual controversy for this court to adjudicate and McMillin will not be subject to irreparable injury. "However, when a pending case involves a question of public interest that is likely to recur between the parties or others, 'the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.'" (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1106–1107, fn. 4.) In light of McMillin's showing that at least one court in this district reached the opposite result in a situation similar to that before the trial court here, and the presentations of amici curiae[4] indicating the issues are of widespread interest in the building industry, we conclude this is an appropriate case in which to consider the issues presented despite real parties' assertion that they are moot.

## III.    The Act

In 2002, the Legislature enacted the Act "to 'specify the rights and requirements of a homeowner to bring an action for construction defects, including applicable standards for home construction, the statute of limitations, the burden of proof, the damages recoverable, a detailed prelitigation procedure, and the obligations of the homeowner.'" (*Anders v. Superior Court* (2011) 192 Cal.App.4th 579, 585.) Chapter 2 of the Act (Chapter 2) sets out building standards, a violation of which constitutes a deficiency in construction for which the builder may be held liable to the homeowner. (§§ 896, 897.) Chapter 3 imposes obligations on the builder. (§§ 900–907.) Chapter 5 sets out the applicable statute of limitations, the burden of proof, the damages that may be recovered, and the affirmative defenses that may be asserted; it also makes the Act binding on successors-in-interest of the original home purchaser. (§§ 941–945.5.)

---

[4]    On June 11, 2015, we granted the applications of Leading Builders of America and California Building Industry Association to appear as amici curiae.

Chapter 4 of the Act (Chapter 4) prescribes nonadversarial prelitigation procedures a homeowner must initiate prior to bringing a civil action against the builder seeking recovery for alleged construction deficiencies. (§§ 910–938.) These are the procedures McMillin contends real parties were required to follow prior to filing suit against them. The procedures require the homeowner to give the builder written notice of the claim that the builder violated any of the standards of Chapter 2; they set time limits for the builder to inspect the alleged defects and make an offer to repair them or compensate the homeowner in lieu of repair. (§§ 910, 916, 917, 929.) If the builder declines to attempt repairs or fails to meet any of the deadlines, the homeowner is released from the requirements of Chapter 4 and may file an action against the builder in court. (§§ 915, 916, subd. (d), 920, 925, 930, subd. (a).) The homeowner may also file an action against the builder if he is dissatisfied with the repairs. (§ 926.)

## IV.   *Liberty Mutual Insurance Co. v. Brookfield Crystal Cove LLC*

In *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98 (*Liberty Mutual*), Hart purchased a new home built by Brookfield. (*Id*. at p. 101.) A few years later, a pipe in the sprinkler system burst, flooding the home and causing damage. Brookfield acknowledged its liability and repaired the damage. (*Ibid*.) Hart lived in a hotel during the repairs; his homeowner's insurer, Liberty Mutual, paid for Hart's hotel and relocation expenses. Liberty Mutual then filed a subrogation action against Brookfield to recover the expenses it paid; the first amended complaint alleged causes of action for strict liability, negligence, breach of contract, breach of warranty, equitable estoppel, and declaratory relief. (*Id*. at pp. 101, 102.) Brookfield's demurrer to the first amended complaint was sustained on the ground Liberty Mutual's complaint was time-barred under the Act. The appellate court reversed.

The court defined the issue before it as: "whether Liberty Mutual's complaint in subrogation falls exclusively within the Right to Repair Act, and therefore is time-barred." (*Liberty Mutual*, *supra*, 219 Cal.App.4th at p. 102, fn. omitted.) The court

6.

stated a key goal of the Act was to abrogate the holding in *Aas v. Superior Court* (2000) 24 Cal.4th 627, 632 (*Aas*). In *Aas*, "the California Supreme Court held that construction defects in residential properties, in the absence of actual property damage, were not actionable in tort." (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 103.) Thus, homeowners could not recover in tort for costs of repair or the diminution in value of the homes arising from construction defects that had not caused property damage. (*Ibid.*) The *Liberty Mutual* court cited the legislative history of the Act, which stated: "'[E]xcept where explicitly specified otherwise, liability would accrue under the standards regardless of whether the violation of the standard had resulted in actual damage or injury. As a result, the standards would essentially overrule the *Aas* decision and, for most defects, eliminate that decision's holding that construction defects must cause actual damage or injury prior to being actionable.'" (*Liberty Mutual,* at pp. 103–104.)

After considering a number of the provisions of the Act, the *Liberty Mutual* court concluded "the Act covers instances where construction defects were discovered before any actual damage had occurred," but does not provide the exclusive remedy when the defects have caused damage. (*Liberty Mutual, supra*, 219 Cal.App.4th at pp. 105, 108–109.) Therefore, the time limitations of the Act did not bar Liberty Mutual's subrogation claims. (*Id*. at p. 109.)[5]

## V.      Scope of the Act

In the trial court, real parties' opposition to the motion for a stay relied on *Liberty Mutual*. Real parties asserted: "This is a matter of law, cemented in the recent decision of *Liberty Mutual* …, which McMillin incorrectly claims is inapplicable to this case.…

---

[5]      Real parties relied on both *Liberty Mutual* and *Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, as establishing that the Act does not provide the exclusive remedy for damages for construction defects that have resulted in property damage. Because the *Burch* court based its decision on that issue on the holding in *Liberty Mutual* and a cursory description of some of the provisions of the Act, without detailed analysis, we do not separately address the *Burch* decision.

In fact, *Liberty Mutual* applies squarely and inescapably to the dispute before this Court.… It holds unequivocally that a plaintiff can bring non-SB800 causes of action for damages that result from violation of the SB800 building standards." Real parties argued that they were permitted to pursue common law causes of action for construction deficiencies that caused damage, and, once they dismissed their third cause of action for violation of the Act, they were pursuing only common law causes of action and were therefore not required to comply with the requirements of the Act, including the prelitigation procedure.

The trial court denied McMillin's motion for a stay, stating: "Pursuant to *Liberty Mutual* …, the Plaintiffs are entitled to plead common law causes of action in lieu of a cause of action for violation of building standards set forth in Civil Code § 896 et seq. ('SB 800'). Plaintiffs need not submit to the SB 800 prelitigation process when their Complaint does not assert claims for violations of SB 800 standards. [¶] The Court also acknowledges that its ruling here involves a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of this litigation. (See Code Civ. Proc., § 166.1.)"

We agree with real parties that the only issue before this court is whether McMillin's motion for a stay pending completion of the prelitigation procedures of Chapter 4 of the Act was properly denied. In order to make that determination, however, we must consider the scope of the Act and to what claims the requirements of the Act, in particular the prelitigation procedures of Chapter 4, apply. *Liberty Mutual* held the requirements of the Act apply only when a plaintiff expressly alleges a cause of action for violation of the Act; it held that, if the plaintiff alleges a common law cause of action to recover for damages caused by a construction defect in residential housing, the Act does not apply and the builder is not entitled to the benefits of the Act. Because it is relevant to the issue before us, we have considered the *Liberty Mutual* decision. We ultimately

8.

reject its reasoning and outcome, however, which we conclude are not consistent with the express language of the Act.

The basic scope of the claims to which the Act applies is set out in section 896. It provides:

> "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction …, a builder … shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title."

Section 896 then goes on to set out various construction standards. Thus, the Act applies broadly to "*any* action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction." (§ 896, italics added.) In such an action, "the claimant's claims or causes of action shall be limited to violation of" the standards set out in section 896. (§ 896.) Section 896 does not limit application of the Act to actions seeking recovery for deficiencies that have not yet caused property damage. The language limiting a claimant's claims or causes of action does not make an exception for common law tort causes of action where the defect has caused property damage. By its plain language, the Act applies to *any* action for damages related to construction deficiencies, and limits a claimant's claims or causes of action to claims of violation of the statutory standards.

Section 897 provides: "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." Thus, the Legislature intended to create a comprehensive set of construction standards and to make the violation of any of those standards actionable under the Act. To the extent it omitted some function or component, however, a deficiency in that function or component would not be actionable in itself, but would be actionable if it caused property damage.

Consistent with section 896, section 943 provides: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed." (§ 943, subd. (a).) A claim covered by the Act is a claim as defined in sections 896 and 897. Thus, the first portion of section 943 precludes any cause of action for damages related to or arising out of a deficiency in residential construction, other than one brought pursuant to section 896 for violation of any of the standards set out in Chapter 2, or one brought pursuant to section 897, where the alleged deficiency involves a function or component not covered in the standards set out in section 896.

The second portion of section 943 precludes a cause of action, other than one under sections 896 and 897, for "damages recoverable under section 944." Section 944 authorizes recovery of:

> "… damages for the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute."

Accordingly, the second portion of section 943 also precludes any cause of action, other than a cause of action under sections 896 and 897, for "the reasonable value of repairing any violation of the standards" or "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards" set out in the Act. In other words, no other cause of action is allowed to recover for repair of the defect itself or for repair of any damage caused by the defect.

Section 896 makes an exception for condominium conversions: "As to condominium conversions, this title does not apply to or does not supersede any other

10.

statutory or common law."  Section 943 also contains an exception:  "In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute."  (§ 943, subd. (a).)  Section 931 clarifies:  "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims, the claimed unmet standards shall be administered according to this part."

*Liberty Mutual* interpreted the scope of the Act much differently, by focusing on other provisions and not fully analyzing the language of sections 896, 897, and 943.  It invoked the general principle that statutes should not be construed to alter or abrogate the common law, unless a legislative purpose to do so clearly and unequivocally appears from the language or evident purpose of the statute.  (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 105; *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 669; *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297.)  It discussed various sections of the Act and concluded the Act did not establish an exclusive remedy for claims of residential construction defects where the defect allegedly resulted in actual property damage.  (*Liberty Mutual*, *supra*, 219 Cal.App.4th at pp. 105, 108–109.)

The court in *Liberty Mutual* first considered sections within Chapter 4.  These sections, however, set out the prelitigation procedures for inspection and attempted repair of construction defects; they do not define the scope of the Act.  (*Liberty Mutual*, *supra*, 219 Cal.App.4th at pp. 105–106, discussing §§ 910, 913, 916, 917 & 921.)  The court then discussed section 942, which provides:

> "In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a homeowner need only demonstrate, in accordance with the applicable evidentiary standard, that the home does not meet the applicable standard, subject to the affirmative defenses set forth in Section 945.5.  No further showing of causation or

damages is required to meet the burden of proof regarding a violation of a standard set forth in Chapter 2 (commencing with Section 896), provided that the violation arises out of, pertains to, or is related to, the original construction."  (§ 942.)

The court concluded the Legislature did not intend to eliminate the need to prove causation and damages where construction defects resulted in actual property damage, but "[t]he elimination of such basic elements of proof … makes perfect sense when the claim is for construction defects that have not yet caused any actual damage."  (*Liberty Mutual*, *supra*, 219 Cal.App.4th at pp. 106–107.)

Section 942, however, pertains only to proof of "violation of a standard set forth in Chapter 2."  Section 896, which is part of Chapter 2, sets out standards residential construction is required to meet.  A violation of any of those standards equates to a residential construction deficiency or defect.  A homeowner may recover for the existence of the defect itself (the violation of the standard) or for damage it caused, or both.  (§ 944.)  Section 942 merely provides that the violation of the standard may be proved by evidence that the applicable standard has not been met; no further proof of causation or damages is needed to recover for the violation of the standard itself.  Section 942 does not eliminate the need to prove causation and damages where the homeowner alleges, and seeks recovery for, other damage or costs allegedly caused by the violation of the standard.

*Liberty Mutual* addressed sections 943, subdivision (a), and 931, which provide:

> "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed.  In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute.  Damages awarded for the items set forth in Section 944 in such other cause of action shall be reduced by the amounts recovered pursuant to Section 944 for violation of the standards set forth in this title."  (§ 943, subd. (a).)

> "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other

statutory remedies, or fraud-based claims, the claimed unmet standards shall be administered according to this part ….” (§ 931.)**6**

The court’s entire analysis of these provisions consisted of one sentence: “These code sections establish the Act itself acknowledges that other laws may apply to, and other remedies may be available for, construction defect claims, and, therefore, that the Act is not the exclusive means for seeking redress when construction defects cause actual property damage.” (*Liberty Mutual*, *supra*, 219 Cal.App.4th at p. 107.) The court did not discuss the effect of the first sentence of section 943, that “no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed.” (§ 943, subd. (a).) It also did not discuss the specific list of exceptions set out immediately following that provision. Neither list of exceptions, in section 943 or in section 931, includes common law causes of action, such as negligence or strict liability. If the Legislature had intended to make such a wide-ranging exception to the restrictive language of the first sentence of section 943, we would have expected it to do so expressly. It did so in the exception of condominium conversions from the scope of the Act: “As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law.” (§ 896.)

The court noted that the Act contains its own statute of limitations, but the Legislature did not repeal the preexisting statutes of limitations, Code of Civil Procedure sections 337.1 and 337.15. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 108.) It concluded: “Those statutes remain and evidence a legislative intent and understanding that the limitations periods they contain could and would be used in litigation other than cases under the Act.” (*Ibid*.) We do not interpret the failure to repeal Code of Civil Procedure sections 337.1 and 337.15 as evidence the Legislature retained them because it intended residential construction defect actions where the defects resulted in actual

---

**6**      The quotation of section 931 in *Liberty Mutual, supra,* 219 Cal.App.4th at page 107, omitted the language “including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims.” (§ 931.)

property damage to be actionable outside the Act. Those statutes of limitation continue to govern actions expressly excluded from the Act, such as actions for personal injuries arising out of construction defects and actions involving nonresidential construction.

Finally, the court discussed section 896. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 108.) Instead of analyzing the language of the section itself, however, the court analyzed the builder's argument, which it dubbed "circular." (*Ibid.*) "Brookfield argues the language 'any action' means that the present case must fall within the Right to Repair Act. Brookfield's argument, however, is circular; Brookfield's argument is essentially that any action arising out of the Act is an action under the Act. Section 896 refers to any action that is covered by the Right to Repair Act; as explained *ante*, we conclude the Act was never intended to, and does not, establish exclusive remedies for claims for actual damages for construction defects such as those suffered by Hart." (*Ibid.*)

Section 896 does not provide that "any action arising out of the Act is an action under the Act." (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 108.) As previously discussed, it provides that "[i]n any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction … , the claimant's claims or causes of action shall be limited to violation of" the standards set out in Chapter 2. (§ 896.) The language of the statute clearly and unequivocally expresses the legislative intent to limit the causes of action available to a homeowner claiming damages arising out of, or related to deficiencies in, the construction of the homeowner's residence.

In *Verdugo v. Target Corp*. (2014) 59 Cal.4th 312, 326–327, the California Supreme Court listed the following as examples of statutes in which the Legislature clearly expressed its intent to abrogate liability under common law principles for acting or failing to act in a particular manner:

> "[N]o social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages." (§ 1714, subd. (c).)

14.

"No person who in good faith, and not for compensation, renders emergency medical or nonmedical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission." (Health & Saf. Code, § 1799.102, subd. (a).)

"An owner of any estate or other interest in real property … owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section." (§ 846.)

The language of the Act is equally clear in barring any cause of action for damages related to residential construction defects other than a cause of action brought in compliance with the Act:

"In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction …, the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title." (§ 896.)

"Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed." (§ 943, subd. (a).)

Consequently, we conclude the Legislature intended that all claims arising out of defects in residential construction, involving new residences sold on or after January 1, 2003 (§ 938), be subject to the standards and the requirements of the Act; the homeowner bringing such a claim must give notice to the builder and engage in the prelitigation procedures in accordance with the provisions of Chapter 4 of the Act prior to filing suit in court. Where the complaint alleges deficiencies in construction that constitute violations of the standards set out in Chapter 2 of the Act, the claims are subject to the Act, and the homeowner must comply with the prelitigation procedures, regardless of whether the complaint expressly alleges a cause of action under the Act.

The legislative history of the Act supports our interpretation of the scope of the Act.[7] The analysis by the Senate Judiciary Committee states:

"*This bill would make major changes to the substance and process of the law governing construction defects*. It is the product of extended negotiations between various interested parties. Among other things, the bill seeks to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, as well as concerns expressed by homeowners and their advocates over the effects of a recent Supreme Court decision that held that defects must cause actual damage prior to being actionable in tort [*Aas, supra,* 24 Cal.4th 627]." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 1, italics added.)

Additionally,

"This bill would provide that *any action* against a builder … seeking recovery of damages arising out of, or related to deficiencies in, residential construction … shall be governed by detailed standards set forth in the bill relating to the various functions and components of the building." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 2, italics added.)

The Assembly Committee on Judiciary described the bill as follows:

"This bill, the consensus product resulting from nearly a year of intense negotiations among the interested parties, proposes two significant reforms in the area of construction defect litigation. First, the bill would establish definitions of construction defects for the first time, in order to provide a measure of certainty and protection for homeowners, builders, subcontractors, design professionals and insurers. Secondly, the bill requires that claimants alleging a defect give builders notice of the claim, following which the builder would have an absolute right to repair before the homeowner could sue for violation of these standards." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 1.)

---

**7** On September 9, 2014, we granted McMillin's motion for judicial notice of the legislative history of the Act.

Additionally,

"According to the author, this bill represents *groundbreaking reform* for construction defect litigation. As many prior bill analyses on this subject have noted, the problem[s] of construction defects and associated litigation have vexed the Legislature for a number of years, with substantial consequences for the development of safe and affordable housing. This bill reflects extensive and serious negotiations between builder groups, insurers and the Consumer Attorneys of California, with the substantial assistance of key legislative leaders over the past year, leading to consensus on ways to resolve these issues.

"… A principal feature of the bill is the codification of construction defects. For the first time, California law would provide a uniform set of standards for the performance of residential building components and systems. Rather than requiring resort to contentions about the significance of technical deviations from building codes, the bill specifies the standards that building systems and components must meet. Significantly, these standards effectively end the debate over the controversial decision in the *Aas* case to the effect that homeowners may not recover for construction defects unless and until those defects have caused death, bodily injury, or property damage, no matter how imminent those threats may be." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2, italics added.)

Describing the prelitigation procedure and the builder's right to repair, the Senate Judiciary Committee stated:

"The bill establishes a mandatory process prior to filing of a construction defect action. The major component of this process is the builder's absolute right to attempt a repair prior to a homeowner filing an action in court. Builders, insurers, and other business groups are hopeful that this right to repair will reduce litigation." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4.)

The Act is referred to as "groundbreaking reform for construction defect litigation" (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2) that "would make major changes to the substance and process of the law governing construction defects." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 1.)

17.

One of the primary purposes of its enactment was to codify a uniform set of construction standards by which to determine whether actionable construction defects exist in a particular residence.  (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2.)  Another purpose was the imposition of a "mandatory" prelitigation procedure giving the builder an "absolute right" to attempt to repair the claimed construction defects before the homeowner could sue in court.  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 1.)  A recurring theme throughout the legislative history is the hope and expectation that the Act would reduce construction defect litigation, thereby decreasing the cost of insurance and litigation to entities involved in the construction industry, reducing the cost of construction, encouraging insurers and builders to return to the market, and making housing more affordable.  (See, e.g., Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2; Enrolled Bill Memo. on Sen. Bill No. 800 (2001–2002 Reg. Sess.) prepared for Gov. Gray Davis (Sept. 19, 2002); Cal. Housing Finance Agency, Enrolled Bill Rep. on Sen. Bill No. 800 (2001–2002 Reg. Sess.) Sept. 7, 2002; Cal. Dept. of Housing and Community Development, Enrolled Bill Rep. on Sen. Bill No. 800 (2001–2002 Reg. Sess.) Aug. 28, 2002; Home Ownership Advancement Foundation, Sen. Floor Alert on Sen. Bill No. 800 (2001–2002 Reg. Sess.) Aug. 30, 2002; Cal. Building Industry Assn., Sen. Floor Alert on Sen. Bill No. 800 (2001–2002 Reg. Sess.); Cal. Chamber of Commerce, Letter to Governor Davis, Sen. Bill No. 800 (2001–2002 Reg. Sess.) Sept. 10, 2002.)

We doubt the Legislature would have viewed the legislation as "groundbreaking reform" or a "major change[]" in the law of construction defects if its provisions were mandatory only when the defect had not yet caused damage, and the homeowner could still sue for damages under any common law theory once property damage occurred,

without being subject to the statutory prelitigation procedure. Further, the codified construction standards could not constitute a uniform set of standards to comprehensively define construction defects if a homeowner could avoid their use simply by suing on common law causes of action after the construction defect has caused actual damage. Like the statutory provisions themselves, the legislative history does not contain any indication the Act was intended to exclude construction defect claims whenever the defect has caused actual property damage. In fact, by including "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards" (§ 944) in the list of damages recoverable in an action under the Act, the Legislature expressed its intent that deficiencies that have resulted in actual property damage are to be covered by the Act. Additionally, it is unlikely the Legislature or the bill supporters would have expected that creating a new statutory cause of action for defects that have not yet caused damage, and leaving intact the common law causes of action available once property damage has occurred, would significantly reduce the cost of construction defect litigation and make housing more affordable.

## VI.    Application to This Case

Real parties' complaint alleged residential construction defects in components or functions for which standards have been established in section 896 of the Act. Thus, their claims fall within the scope of the Act. Section 910 provides that, before a homeowner files "an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2," the homeowner must give written notice to the builder of the claim that the construction of the residence violates any of the standards in that chapter. (§ 910, subd. (a).) That notice sets in motion the nonadversarial prelitigation procedure of Chapter 4, which affords the builder an opportunity to attempt to repair the claimed deficiencies before the homeowner initiates expensive and time-consuming litigation. If the homeowner does not comply with the Chapter 4 procedure,

19.

"the builder may bring a motion to stay any subsequent court action … until the requirements of this chapter have been satisfied."  (§ 930, subd. (b).)

Because real parties did not comply with the requirements of Chapter 4 and accommodate McMillin's absolute right to attempt repairs, McMillin is entitled to a stay of the action until the statutory prelitigation process has been completed.  Accordingly, we will grant McMillin the relief sought in the writ petition.

## *DISPOSITION*

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of February 27, 2014, denying McMillin's motion to stay the litigation, and enter a new order granting the motion and staying the litigation until the parties have satisfied the requirements of the statutory prelitigation procedures found in Civil Code sections 910 through 938.  The parties are to bear their own costs on appeal.


_____
                                        HILL, P.J.

WE CONCUR:


_____
GOMES, J.


_____
KANE, J.