Filed 1/29/21  P. v. Amador CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS M. AMADOR,<br><br>        Defendant and Appellant. | B305288<br><br>(Los Angeles County<br>Super. Ct. No. BA234510) |

APPEAL from an order of the Superior Court of Los Angeles County.  Kathleen A. Kennedy, Judge.  Affirmed.

Marilee Marshall for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2003, defendant and appellant Carlos M. Amador pleaded guilty to four counts of second degree murder (Pen. Code,

§ 187)[1] and was sentenced to four concurrent terms of 15 years to life in state prison.

On April 22, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. Following a hearing, the trial court denied the petition, finding that defendant had not stated a prima facie case for relief.

Defendant timely filed a notice of appeal. He argues that because he established a prima facie case that he is potentially eligible for resentencing relief, the trial court should have issued an order to show cause and held an evidentiary hearing. Although the People agree that the matter should be reversed, we are not convinced. As a matter of law, defendant did not demonstrate a prima facie case for resentencing relief. Accordingly, we affirm.

## FACTUAL BACKGROUND[2]

Just after 11:00 p.m. on May 4, 2002, Harish "Harry" Kumar[3] (Kumar) came home and discovered his home engulfed in flames. Police officers and firefighters responded to the home. Four members of Kumar's family (his mother (Sitaben Patel

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Because defendant pleaded guilty prior to trial, parts of this factual background are taken from the transcript of his preliminary hearing, a copy of which was attached to the opposition to defendant's resentencing petition. Other facts are drawn from defendant's testimony at codefendant Virenda "Victor" Govin's (Victor) trial.

[3] Harry Kumar was also known as Harry Patel.

(Patel)), his wife (Gita Kumar (Gita)), and his two children (Paras Kumar (Paras) and Tulsi Kumar (Tulsi))[4] were found burned to death in a bedroom near the entry of the home.  Each victim was bound in some fashion and had duct tape over his or her mouth and/or eyes.  Fire investigators determined there were three separate incendiary fires in the residence.

Kumar's family owned the Universal City Inn in Studio City.  Gita was in charge of the business.  Victor owned a hotel, the Studio Place Inn, located directly adjacent to the Universal City Inn.  Victor had asked Kumar to sign papers giving him rights to an easement in the alley.  Kumar told Victor it would be Gita's decision.  The Kumars and Victor both had expansion projects that required use of the alley.

After seeing news coverage of the murders, Angelberto Novoa (Novoa) contacted detectives and told them that six weeks prior to the fire, individuals known to him as "Pedro" and "Freddie" (later identified as defendant and Victor, respectively) solicited him and a friend to go to the same house that was burned to intimidate the people who lived there into signing papers.  Novoa said that he and Antonio Renteria met with defendant, but ultimately declined to work with them.

Detectives interviewed Milton Salas (Salas), who described a conversation he had with defendant.  Defendant told Salas that he had gone with two of his Indian friends (who owned hotels) to a house to get documents signed, that "'things got out of hand,'" someone's face had been seen, and one of them ordered that

---

[4]     Because some of the victims and two of the perpetrators share the same last names, for ease we refer to them by their first names.

3

everyone in the house be killed and the house burned. Defendant said he took watches and/or jewelry from the house.

Detectives interviewed Droshawn Goodin, who told them that defendant had asked him to be an alibi witness for the night of the murder**s**.

Video surveillance footage showed defendant's truck driving toward the victims' residence around 9:00 p.m. on the date of the murders, and driving away from the residence shortly after 11:00 p.m.

Defendant was arrested and interviewed by the police. According to his preliminary hearing testimony, defendant admitted his involvement in the crimes and identified Victor and Pravin "Peter" Govin (Peter) as his coperpetrators. Defendant said that on the night of the offense, he met Victor and Peter at a restaurant around 6:00 p.m. They then drove together to the victims' house in defendant's truck. Once there, Victor went up to the door first. Peter and defendant, each armed with a gun, went to the door some time later. Peter ordered the occupants of the home, including Victor, to lay on the floor, as a home invasion robbery being staged. Peter told defendant to go to one of the bedrooms where the children would have been. Defendant went into the bedroom of 18-year-old Paras. Victor subsequently joined them and tied up Paras.

Defendant said that he and Victor also went to 16-year-old Tulsi's bedroom and tied her up as well. Both children were then moved to another bedroom. Defendant said that he, Peter, and Victor looked around the house for money.

Defendant stated that Patel and Gita were at one point restrained in the living room; Peter repeatedly kicked and shouted at Gita. Paras broke free from the bedroom and pleaded with the men to stop attacking his mother. Peter and Victor then assaulted Paras and restrained him again in the bedroom. Defendant said that he told Peter and Victor that he had not "signed on for this" and "wanted no part of it," so he went outside to his truck.

Within five minutes, Peter and Victor joined him.

Defendant offered a slightly different account of the events when he testified at codefendant Victor's trial. According to the summary of that testimony, which was attached to the People's opposition to defendant's resentencing petition, defendant testified that he participated in the armed robbery at the Kumar residence and helped bind the victims. Defendant also testified that at Victor's direction, he poured flammable liquid in the master bedroom. At one point, defendant went to the bedroom where the victims were tied up. When defendant questioned Victor's actions and asked why he was "'killing them,'" Victor replied, "'Because she saw me.'" Defendant told Victor, "'Okay. If she saw you, why don't you just kill her?'" Victor said that they were all going to die. Defendant maintained that he left at that point.

**PROCEDURAL BACKGROUND**

I. *Defendant's section 1170.95 petition*

On April 22, 2019, defendant, through counsel, filed a petition to be resentenced pursuant to section 1170.95. He averred that an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and he could not now be convicted of murder because of changes made to sections 188 and 189, effective January 1, 2019.

The People opposed the petition, arguing, inter alia, that defendant was not entitled to relief because there was "more than sufficient evidence in the record of conviction to sustain a first degree murder conviction on a felony murder theory and a felony murder special circumstance." And, there was more than sufficient evidence that defendant acted with a conscious disregard for human life, the mental state required for his second degree murder convictions.

Defendant filed a reply brief, arguing that he did set forth a prima facie case for relief. Thus, he requested that the trial court set a hearing to determine whether to vacate his murder conviction and resentence him.

II. *Trial court's order denying defendant's petition*

On January 17, 2020, the trial court entertained oral argument and then denied defendant's petition. After summarizing the facts of the crimes (based on evidence from a codefendant's trial at which defendant testified), the trial court concluded that defendant was a major participant who acted with conscious disregard for life. The trial court explained: "[T]he

6

idea that he is not a major participant acting with reckless disregard is comical because it's just not true.  [¶]  And I think, as the prosecutor said, he could have been convicted as an aider and abettor.  He could have, himself, gotten the death penalty on a first degree murder conviction.  And there's clearly, clearly more than enough to support the second degree [murder] convictions.  [¶]  He should be counting his lucky stars every day that he is alive.  He is alive and [still] breathing.  And four people are dead, and largely because of his participation in those murders.  [¶]  This is one of the most horrible cases that I have ever had, and I wish that I could get it out of my mind.  I wish I could not have heard the horror and seen the photographs and the suffering of these people that died.  [¶]  This case will be with me until I die.  And [defendant] has some time to think about it.  [¶]  I mean, if he has been a model prisoner, and he is not really the criminal that you say, perhaps the Department of Corrections will release him; I mean, he is eligible for parole by now I would imagine because this trial was in 2003.  So he has done, you know, 15 years.  I mean—although the day that he walks out of prison, if that day ever comes, watch out everybody.  Because this is one of the most dangerous people ever.  And he doesn't have a conscience at all, and I think I mentioned that before.  [¶]  Because how can you participate in this and then, if this is so horrible that he says, you know, 'I didn't sign up for this,' and he leaves the house, why doesn't he do something to save these people?  [¶]  Nothing.  He does nothing.  He continues to assist these people in getting away, in stealing the things that they stole and everything.  [¶]  And there is no way that I find that the defense has made a prima facie case in this case, so the 1437 petition is denied."

**DISCUSSION**

I. *Standard of Review*

We review the trial court's order de novo. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *A.S. v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

II. *Relevant Law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).) The statute applies to persons convicted after trial and to persons who entered a guilty plea. (§ 1170.95, subd. (a)(2); *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919 ["Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply"].)

In order to obtain Senate Bill No. 1437 resentencing relief, the petitioner must proceed sequentially through section 1170.95's separate steps. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140 (*Lewis*), review granted Mar. 18, 2020, S260598; see also *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [sequential structure of a statutory scheme supports interpretation that acts required by the statutes occur in the same sequence].) First, a defendant must file a facially sufficient section 1170.95 petition. The petitioner must aver that he is eligible for relief because (1) an accusatory pleading was filed against him allowing the prosecution to

proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder; and (3) he could not be convicted of murder as a result of the recent amendments to sections 188 and 189.  (§ 1170.95, subds. (a)(1)-(3), (b)(1)(A).)

The trial court must immediately review the petition and, if the petitioner is ineligible for resentencing as a matter of law because of some disqualifying factor, the trial court must dismiss or deny the petition.  (See *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328–333 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58 (*Cornelius*), review granted Mar. 18, 2020, S260410; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140.)[5]

However, if the petition is facially sufficient, the petitioner is entitled to the appointment of counsel, if requested, and the People may then brief the question of whether the petitioner is entitled to relief.  (§ 1170.95, subd. (c); *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 331–332.)  In contrast to the first step showing, the trial court makes the second step determination with the benefit of briefing and analysis by both parties, thereby permitting the trial court to undertake more informed analysis concerning a petitioner's "entitle[ment] to relief," relief meaning an evidentiary hearing, not necessarily entitlement to resentencing.  (§ 1170.95, subd. (c);

---

[5]     Disqualifying factors, or factors indicating ineligibility, include, for example, a petitioner who admitted to being the actual killer (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330) or a petitioner that the jury found was the actual killer (*Cornelius*, *supra*, 44 Cal.App.5th at p. 58).

*Drayton, supra*, 47 Cal.App.5th at p. 975.)[6] When making this determination, "the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . . [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton, supra*, at p. 980; see also *Lewis, supra*, 43 Cal.App.5th at p. 1138 [the contents of the record of conviction defeat a petitioner's prima facie showing only when the record "show[s] as a matter of law that the petitioner is not eligible for relief"].)

---

[6] Although the same type of information from the record of conviction could result in denial of a petition at either prima facie step, the two steps are procedurally distinct and should not be read as a redundancy written into the statute. The statute contemplates two separate determinations that the trial court must make at different times during the petition procedure. (*Verdugo, supra,* 44 Cal.App.4th at pp. 328–329; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted Nov. 10, 2020, S264684 [concluding that the right to counsel attaches upon the filing of a facially sufficient petition and disagreeing with *Verdugo, supra,* at p. 320].)

10

Only if the trial court determines that the petitioner has made a prima facie showing of entitlement to relief must it issue an order to show cause.  (§ 1170.95, subd. (c).)

III. *The trial court did not err*

The parties agree that defendant made a prima facie showing of eligibility.  After all, he filed a section 1170.95 petition averring that (1) an information had been filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule or the natural and probable consequences doctrine; (2) he was convicted of second degree murder; and (3) he could not now be convicted of murder following the amendments to sections 188 and 189.  And, according to the People on appeal, after an examination of the record and briefing by both parties, there was no evidence to indisputably show that, as a matter of law, defendant was ineligible or not entitled to relief.

We are not convinced by the parties' position.  Rather, we conclude that the trial court's analysis was correct and that defendant did not demonstrate a prima facie showing of either eligibility or entitlement to resentencing relief.

The trial court denied defendant's petition on the grounds that defendant was a major participant who acted with reckless disregard in the commission of the horrific murders.  Given the horrendous facts in this case, this was the only conclusion to be reached.[7]  There is ample evidence that defendant was a major

---

[7]     We reach this conclusion even without the aid of jury instructions, verdict forms, or pretrial motions that would have assisted us in discerning under what exact theory defendant would have been prosecuted, or under what theory his counsel advised him to plead guilty to second degree murder.

11

participant in the crimes and acted with reckless indifference to human life as those phrases are defined under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. (§ 189, subd. (e)(3).)  At both the preliminary hearing and Victor's trial, defendant admitted his participation in the crimes.  He testified that he was at the Kumar home and participated in the tying up of the victims.  And, at Victor's trial, he admitted that he poured flammable liquid in the master bedroom.  (See *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167 [the defendant's "murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate [that the defendant] was convicted of second degree murder as a direct aider and abettor"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 148 ["Presence at the scene of the murder is a particularly important aspect of the reckless indifference inquiry" and "[a] law-abiding person in [the defendant's] position would have perceived that beating, binding, and gagging [the victim] with duct tape created a grave danger to his life, and [the defendant] knowingly and actively participated in this prolonged robbery in disregard of that risk"].)

Certainly defendant stated that he left the home before his coperpetrators set the house on fire.  But defendant leaving the Kumar home in what seems to have been moments before four people were asphyxiated and/or burned to death does not defeat the conclusion that he was a major participant in the crimes and acted with reckless indifference to human life.  He had already set the victims up to be murdered by tying them up and pouring a flammable liquid in the house.  And, if he was naïve enough not to realize what was going to come next until he walked out of the

house, he could have done something to stop the murders.  But, as the trial court aptly noted, he did nothing to stop the murders; he did nothing to save four innocent victims.  (*People v. Clark*, *supra*, 63 Cal.4th at p. 619 [if a defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders].)  Instead, he helped his coperpetrators get away and then kept the loot from the robbery.

Notably, "[t]his is not a case . . . where the petitioner pleaded guilty to a felony murder based on a robbery, and an evidentiary hearing under section 1170.95, subdivision (d) was necessary to determine whether the petitioner could be convicted of felony murder in light of the changes to section 189, subdivision (e)(3), as a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Nguyen*, *supra*, 53 Cal.App.5th at p. 1167, distinguishing *Drayton*, *supra*, 47 Cal.App.5th at p. 981.)  There is no mention in the appellate record or in defendant's appellate briefs that defendant could be found guilty of some less serious crime than murder.  (*People v. Nguyen*, *supra*, at p. 1167.)  "And it would be speculative for his counsel or this court to suggest such a crime at this stage." (*Ibid.*)

Under these atrocious circumstances, defendant has not demonstrated a prima facie showing that would entitle him to an evidentiary hearing.

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

14